Argued June 6, decided June 13, 1911.

## ANDERSON v. MIAMI LUMBER CO.

[116 Pac. 1056.]

LOGS AND LOGGING—TRANSFER OF TIMBER—ESTATE UPON CONDITION.
1. Plaintiffs transferred to defendant's predecessor all the timber upon a · tract of land, by a deed which provided that the grantee should remove such timber within five years, and that the title to all timber not so removed, and remaining on said premises at the expiration of said five years shall revert to the grantors. Subsequently the time for the removal was extended for two years. *Held*, that the title to all the timber on the tract vested in defendant's predecessor, but that it was an estate upon condition liable to be defeated on failure of the grantee to remove within the time specified, and that the grantors, on the expiration of the extended time, became owners · of the timber, including trees that were cut down and not removed from the tracts, together with those that were cut down and cut into sawlogs, and which remained upon the tract

LOGS AND LOGGING—CONVEYANCE OF TREES.
2. A conveyance of growing trees upon the land conveys the interest in the land of which they are a part, so that an individual conveyance of growing trees without the land does not instantaneously sever the trees from the land in contemplation of law, and transform them into personal property.

WORDS AND PHRASES—"TIMBER."
3. The term "timber" as commonly used in this· country, signifies either growing trees, or large sticks, and is not commonly applied to small pieces or rails or cordwood into which the larger pieces may be worked up.

INJUNCTION—REMOVAL OF TIMBER.
4. Where defendants under a contract for the sale of the timber on certain tracts, to be removed before a certain date, or become the property of the grantor, proceed to remove timber from the land after that date, injunction will lie to prevent its removal, as equity will interfere to prevent a continuous trespass or repeated trespasses.

From Tillamook: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by Lillie R. Anderson and S. V. Anderson, plaintiffs, against the Miami Lumber Company, a corporation, defendant-appellant herein, L. A. Ganahl and W. T. Botsford, doing business under the firm name of Ganahl & Company, A. L. Jones, Rollie Watson and Fred Wheeler, defendants. The facts as disclosed at the trial are as follows:

On May 10, 1902, plaintiffs conveyed to the Hadley Lumber Company, the predecessor in interest of the Miami Lumber Company, by warranty deed, all the timber situated upon the tract of land lying adjacent to the Trask River in Tillamook County. The deed contained this proviso:

"Provided, further, that the grantee herein, or their successors or assigns, shall remove such timber from such premises within five years from the date of this instrument, and that the title to all timber not so removed and remaining on said premises at the expiration of said period of five years, shall revert to and become vested absolutely in the grantors herein."

Subsequently, upon the payment of an adequate consideration, the time for the removal of the timber was extended for two years. The contract expired by its terms on May 10, 1909. A short time prior to the latter date the defendants, by their contractors, Jones, Watson & Wheeler, cut down about 1,400 trees, a part of which they cut into sawlogs, and marked the remainder to be manufactured into logs; and after the 10th day of May, 1909, they were proceeding to saw and put into the river, as sawlogs, the trees so felled until the work was stopped

by an injunction issued in this case.    Plaintiffs brought this suit to enjoin them from removing the trees or trespassing upon the land.    Defendants Ganahl and Botsford answered, disclaiming any interest in the subject-matter or any action on their part adverse to plaintiffs' interest. Jones, Watson & Wheeler answered, alleging that they were contractors under the Miami Lumber Company and that company answered, setting out the deed from plaintiffs to the Hadley Lumber Company and the subsequent extension of time, claiming that the felling of the trees within the life of the contract constituted a "removal of the timber from the premises" within the meaning of the contract.    The court found against the defendants, the Miami Lumber Company and Jones, Watson & Wheeler, and dismissed the suit as to Ganahl and Botsford.    The Miami Lumber Company appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Talmage & Johnson*, with an oral argument by *Mr. C. W. Talmage.*

For respondents there was a brief with oral arguments by *Mr. Ralph R. Duniway* and *Mr. A. W. Severance.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. Appellant's contention in this case has been very ably and ingeniously presented, but we are unable to concede that it is sound.    We agree with appellant's counsel that the present title to all the timber on the tract vested in appellant's predecessor in interest, but it was an estate upon condition liable to be defeated upon failure of the grantee to remove the timber within the time specified.

The language in the deed "provided that the grantee herein or their successors and assigns shall remove such timber from said premises within five years from the date of this instrument" would of itself make the deed

conditional. *Oregon Railroad & Nav. Co.* v. *McDonald,*
58 Or. 228 (112 Pac. 413). But in addition to this there
is a clause providing that "the title to all timber not so
removed and remaining on said premises at the expira-
tion of said period of five years shall revert to and
become vested absolutely in the grantors herein." Now,
it is conceded that the trees in question were not, in fact,
removed from the premises; that a large part of them
remained upon the ground in the shape of felled trees,
marked for sawing; and that a small quantity were cut
already into sawlogs. It is claimed that the cutting of
these trees and severing them from the soil constituted a
technical "removal from the premises," and that the
defendants had a reasonable time after the expiration of
the grant to actually remove them. The very statement
of the proposition involves a contradiction. If the timber
was removed by the act of cutting, then it *was* removed
and no further act was required. To say that it was
removed as a matter of law, and that defendants had a
right to enter upon the premises, after the expiration of
the time limit set in the deed, and thereafter to remove it,
as a matter of fact involves a degree of legal metaphysics
which we are unable to attain. If trees, which have been
cut down and which lie undisturbed at the foot of the
stumps, are timber, or if the same trees, which have
been cut into sawlogs and which are left lying where
they fell, are timber, then it follows from a necessary,
usual, and common-sense definition of the term "removal
from the premises" that they could not be, in a legal
sense, removed, while they were, in fact, remaining
physically on the premises. However, as defendant's
counsel have cited authorities which they claim estab-
lish an opposite view to that above indicated, we will
discuss those which we consider as most strongly tend-
ing to support defendant's contention.

In *Hoit* v. *Stratton Mills,* 54 N. H. 109 (20 Am. Rep.
119), the grantor conveyed the timber on her land to

the grantee by deed, agreeing to deliver it to him at a place, not on the land, at a certain time. There was a further agreement that, if she did not deliver it at the time and place mentioned, the grantee might enter and remove it. She failed to keep her agreement to deliver, and after several years had elapsed the grantee entered and removed the timber. The assignee of the grantor brought an action for trespass for the removal, and it was held that, in the absence of any stipulation to the contrary, the grantee was to be presumed to have a reasonable time within which to remove the timber, but that it could not be presumed that it was intended that he should be allowed to let it stand at his pleasure; that the grantee, having entered after a reasonable time had expired, was liable for trespass for the unlawful entry, but, there having been an absolute sale to him of the timber, he was not liable for its value. In other words, that he, having unlawfully entered to reclaim his own, was liable in damages for the unlawful entry, but not for the value of his own property, which he had removed. This case differs from the one at bar in this: (1) That no time was fixed within which the grantee might enter and remove the property; (2) that there was no clause in the deed providing for a reversion of the estate in case of the grantee's failure to remove the timber within a fixed or a reasonable time. The court lays stress upon the absence of these two provisions, saying: "The deed, in terms, says nothing about a reasonable time, and nothing about a condition of removal within a reasonable time," and it might well have added, "and nothing about a reversion in case of failure to remove within a reasonable time."

2. In addition to this the court held, following a rule peculiar to New Hampshire and a very few other states, but not recognized in this State or in the majority of states, that "an unconditional conveyance of growing trees without the land, instantaneously severs them from

the land in contemplation of law, and transforms them into personal property"; the rule in this State being that a conveyance of growing trees upon the land conveys an interest in the land of which they are a part.

In *Magnetic Ore Co.* v. *Marbury,* 104 Ala. 465 (16 South. 632: 27 L. R. A. 434: 53 Am. St. Rep. 73), it is held that an absolute conveyance of saw timber growing on land, without condition or limitation as to time of removal, vested the title to the timber absolutely in the grantee forever. This is good law probably, but has no application to a case like the present one when there is a definite time fixed for removal of the timber and a definite reverter in case of nonremoval.

The case last cited differs from the New Hampshire case in apparently ignoring the theory that a "reasonable time" within which to remove timber is implied where no time is mentioned and in holding that the grantee in such a deed is never a trespasser in entering to remove his property.

*Halstead* v. *Jessup,* 150 Ind. 85 (49 N. E. 821), was a case of absolute sale of timber with "four years to take off said timber." It was held that, in the absence of a forfeiture clause, the purchaser was entitled to take the timber after four years, but would be liable for damages. This case is easily distinguished from the case at bar by the absence of a forfeiture clause in the contract which is so conspicuous and clear in the present case, but we may remark in passing that if the learned court means to be understood as holding that a man may commit a trespass to take away timber, after the time limit provided in the deed has expired, it asserts a very novel proposition of law. The proposition that one may lawfully commit an illegal act in order to acquire his property, and that the courts will protect him in equity in so doing, but subject him to damages at law for the same act, involves a confusion of ideas. The reluctance which

all courts display to enforce a forfeiture is responsible for much doubtful law in cases of this kind.

*Mee* v. *Benedict,* 98 Mich. 260 (57 N. W. 175: 22 L. R. A. 641: 39 Am. St. Rep. 543), holds that a conveyance of timber with license to remove, within a term of years with reverter to the grantor, of timber not removed within that time, vested title to the timber in the grantee. This is in accord with our own view of this case. There is no doubt that the title to the timber embraced in the deed in the case at bar vested in the grantee, but subject to be divested by noncompliance with the condition providing for its removal. The question of noncompliance with the condition was not involved in the Michigan case above cited.

3. *Hubbard* v. *Burton,* 75 Mo. 65, involved a conveyance of timber to be removed within 12 months. It was held that the word "timber" meant trees standing, felled, or lying in their natural state on the land, and did not include railroad ties. The term "timber," as commonly used in this country, signifies either growing trees or large sticks, and is not commonly applied to smaller pieces or rails or cordwood into which the larger pieces may be worked up.

*Golden* v. *Glock,* 57 Wis. 118 (15 N. W. 12: 46 Am. Rep. 32), applies this rule to stave bolts, while *Hicks* v. *Smith,* 77 Wis. 146 (46 N. W. 133), applies the same doctrine to sawlogs, but in this case there was no condition or reversion clause in the deed, which distinguishes it from the case at bar, and as the case stands we cannot agree with the reasoning of the learned court, and decline to hold that a tree or log left lying upon the land is in a legal sense removed from the land.

These are not all the cases cited by counsel for defendants, but they are typical of all, and they fail to convince us of the correctness of defendants' contention. On the other hand, it was held in *Pease* v. *Gibson,* 6 Greenl. (Me.) 81, where an owner of land sold all the pine trees on a

tract, the purchaser to have two years to take off the timber, that this was only a sale of what the purchaser could take off in two years. It will be noticed in this case that there was no reversion clause in the conveyance. To the same effect is *Howard* v. *Lincoln,* 13 Me. 122.

In *Webber* v. *Proctor,* 89 Me. 404 (36 Atl. 631), where a grantor conveyed trees and hemlock bark and a tract of land "with the right to enter upon said lot of land at any and all times during the term of 10 years to cut any trees and make necessary roads, to remove said hemlock bark and hemlock trees or logs from the land during the term aforesaid without being liable for trespass." If it was held that this amounted only to a grant of such trees and bark as should be cut and removed within the term, the court saying, 'to admit the construction given by the defendant's counsel, and consider such a permission as a sale of the trees, to be cut and carried away at the good pleasure of the purchaser, and without any reference to the limitation, in point of time, specified in the permit, would be highly injurious in its consequences. It would deprive the owner of the land of the privilege of cultivating it and rendering it productive, thus occasioning public inconvenience and injury, and, in fact, it would amount to an indefinite permission.' "

In the case at bar it appears that the river bottom across which logs must be transported to get them to market is composed of a productive soil, the occupation of which by defendants for logging operations would materially interfere with its improvement and cultivation.

In *McIntyre* v. *Barnard,* 1 Sandf. Ch. (N. Y.) 52, which is a well-considered and instructive case, the deed conveyed to the grantees "all the pine timber standing or being on the premises * * together with the right of entering upon the land until January 1, 1841, to cut and remove said timber." The vice chancellor said:

"It is admitted that, if this clause has not been inserted, a right of entry would have passed by the instrument,

commensurate with the removal of all the timber. Why, then, was it inserted? The parties could not have designed to subject the grantees to actions of trespass, in removing their own property from the premises. The complainant could not have stipulated for such an absurd proposition, nor the grantees have assented to it. Nor is it credible that the parties expected the whole of the pine logs, 75,000 in number, to be removed by January, 1841. The conclusion most satisfactory to me is that the clause in question was designed to limit the whole grant; and that the object of the grant was the sale of all the pine logs which should be taken off by January, 1841, and nothing beyond that. The complainant's agent, doubtless, supposing it to be impracticable for the grantees to remove one quarter of the timber within the stipulated period, and the grantees, relying upon their own diligence and exertions to get off all that they could, and thus enhance the profit of the enterprise."

The court in this case enjoined the defendants from cutting more timber or removing that already cut, and the case is not only an authority in favor of the principal contention of plaintiffs, but also sustains the subsidiary one that equity will interfere to prevent the continuous and repeated trespasses involved in an attempt to unlawfully carry on protracted logging operations over the land of another.

*Allen & Nelson Mill Co.* v. *Vaughn,* 57 Wash. 163 (106 Pac. 622), is a case exactly in line with plaintiff's contention here, and, coming from the court of an adjoining state where conditions are the same as here, it is of great value. In the above case there was an absolute conveyance of the timber on a certain tract of land for a consideration of $2,000, with this condition:

"It is further agreed that said parties of the second part shall have three years from and after the date hereof within which to remove said timber."

There was no reversion or forfeiture clause of any kind. The purchasers did just as the defendants in this case; they cut down the standing trees before the expira-

tion of the time limit, and claimed the right to remove them afterwards. The plaintiffs who were successors to the title of the original grantors brought suit to enjoin the unlawful cutting and removal of the timber, and the lower court held, as the defendants in this case now contend, that the purchaser had no right to cut timber after the expiration of the time limit fixed in the deed, but that they had a right to remove timber which was lying on the ground, and which had been cut before the three years had elapsed. The Supreme Court, in an opinion which seems to the writer unanswerable in its reasoning reversed the lower court, and held that the right of removal terminated with the expiration of the time limit. We quote from the opinion the following:

"Our own view is that this contract should be construed as any other contract for the purpose of ascertaining what was intended by the contracting parties, and in so construing it we conclude that it was the intention of the parties that the purchaser should have the three years specified for a removal of the timber whether standing or lying down, and that at the expiration of that time his interest in the timber should cease, and that the title to the timber would then be in the person owning the land. What possible interest would the seller have in the date when the timber should be cut down, if there was to be no limit on the time of its removal from the land? That would be a matter which would be of interest only to the buyer, and concerning which he would not be likely to counsel or contract with the seller. In many of the contracts which have been construed by the courts the language is 'cut and remove,' but it is evident that the main consideration, even in those cases, is the removal. Just how the removal is to be effected is not of interest to the seller. The great desideratum to him is the recovery of the possession of his land at the time specified. A man might reasonably be willing to sell timber on land at a certain price if the unobstructed possession of the land were assured to him in three years, when he would demand a greater price, or perhaps refuse to sell at all, if he could not regain the premises for five

years or for some longer period. He is not in any way benefited by cutting the timber down and cumbering the ground with fallen trees. So far as his use of the ground is concerned the trees had better be left standing. * * Many of the cases are also based upon the conclusion that a provision of this kind is a covenant rather than a forfeiture, but this is dealing with definitions rather than principles, for the carrying out of covenants sometimes necessarily works as a forfeiture. Neither is it profitable to enter into a discussion of technical distinctions between real estate and personal property. Such distinctions tend to lead away from the essential idea, viz., what was the intention of the parties to the contract under consideration. * * All these technical questions have been determined by this court in *Lehtonen* v. *Marysville & Power Co.* 50 Wash. 359 (97 Pac. 292). * * There it was said: 'Whether the reservation of the timber made it, in legal effect, personal property or otherwise, makes no difference. It is material what the theoretical character becomes. The contract of reservation provides that it shall be removed within a given time. If it was the intention of the parties that the timber might be removed after that time, the limitation means nothing, and was misleading.' * * Certainly the respondent cannot escape the important provision providing the time within which he is permitted to remove the timber. He knew that, under the plain provisions of his contract— and it is difficult to see how it could be made plainer—he had three years from the date of the contract in which to remove the timber. His action in cutting more timber than he could or would remove in that time was an evasion of both the letter and spirit of his contract, and he must suffer the consequences of his own failure to comply with the contract. This construction also does away with the illogical holding of some of the courts that, notwithstanding the fact that the contract must be construed as preventing the removal within the time specified, yet the purchaser has a right to the property even though asserting dominion over the property places him in the role of a trespasser."

We have quoted thus at length from the foregoing opinion because it comes from the court of a state where logging is one of the great industries, and because it

answers so completely every contention made by defendants in the case at bar. It is common knowledge that there are many contracts of the character of the one here in litigation now in existence in this State, and in view of the future importance of the logging industry many more such contracts will be entered into. Realizing, therefore, the importance of this case in the bearing that it may have upon present and future contracts of the same character we have devoted more than usual time and space to its discussion, to the end that hereafter parties to such contracts may fully comprehend their import and the respective rights and obligations arising therefrom.

4. There remains but one more question to be disposed of, namely, the objection that equity will not interfere in cases of this character, but will leave the plaintiff to his remedy at law. That equity will interfere to prevent a continuous trespass or repeated trespasses involving a multiplicity of suits is elementary. Its jurisdiction has been invoked in many of the cases of this character cited in this opinion, and is upheld in *Roots* v. *Boring Junction Lumber Co.,* 50 Or. 298 (92 Pac. 811: 94 Pac. 182).

The decree of the circuit court is affirmed.

AFFIRMED.

MR. JUSTICE BURNETT took no part in this decision.