(No. 5364. July 26, 1929.)

W. C. SPENCE, Respondent, v. L. W. PRICE, Appellant.

[279 Pac. 1092.]

James F. Ailshie, Peter Johnson and W. B. McFarland, for Appellant.

Myrvin Davis, for Respondent.

T. BAILEY LEE, J.—Plaintiff, Spence, plead that on July 7, 1925, a fire started by some unknown agency upon the premises of defendant, Price; that defendant discovered the fact when said fire had not extended over an area of sixteen square feet and could easily have been extinguished; that one Emmons offered to assist him in putting it out at the time, but that defendant refused, saying he purposed letting it burn off his meadow; that one Goodwin,

warned defendant, and asked him to guard it, but that defendant continued to allow the fire to burn without any effort to extinguish it; that by reason of such negligence the fire continued to burn until August 26th, when it spread through adjacent land to a particular parcel on which were situate certain buildings and 1600 cords of ''Black Pine stumpage'' belonging to plaintiff, consuming such property, to plaintiff's damage in the sum of $950.

Plaintiff had plead that the fire ''burned and destroyed certain property of this plaintiff, . . . . which property so burned and destroyed was in the possession of this plaintiff, and which property of this plaintiff consisted of the following items.'' (Naming them.)

A general demurrer and motion to strike having been overruled and denied, a jury trial ensued, resulting in a verdict in plaintiff's favor for $200. Defendant's motion for directed verdict had been denied.

██ Of the many errors urged on appeal from the consequent judgment, only a few have to be disposed of. The general demurrer having admitted plaintiff's title to and possession of the property, and that defendant knew of the fire when it was inconsequential, could easily have put it out, did not do so but let it burn for fifty days with the result alleged, was properly overruled. The transcript contains no answer nor praecipe requiring one; and, no issues being indicated, we are of necessity compelled to search the record to determine whether or not plaintiff made out a case. The buildings are eliminated from consideration, no evidence of plaintiff's title thereto having been submitted.

██ In order to show title and rightful possession in himself, plaintiff introduced in evidence, over defendant's objection, a certain contract between the state of Idaho and the Humbird Lumber Co. That contract entered into on July 21, 1923, contained among others, the following paragraphs:

''Whereas, said timber has been sold to said purchaser on said bid;

"Now, therefore, in consideration of the acceptance of the total amount of said purchase price, receipt of which is hereby acknowledged by the State, it is hereby agreed between the State and the said purchaser as follows, to-wit:

"That the State of. Idaho does hereby give, grant, bargain, sell and convey to the said purchaser herein named all the timber hereinafter described, standing, growing or being upon the following described lands in the County of Bonner, State of Idaho, to-wit: . . . .

"It is expressly agreed between the parties that the purchaser shall have the full right to go upon any of said lands herein described and to cut and remove and carry away and dispose of the timber herein sold and conveyed; it is expressly agreed, however, that the timber purchased hereunder must be cut and removed from the above described lands within three (3) years from date of this agreement, and that at the end of said three year period all the timber of every kind remaining upon said lands or any part thereof shall be the property of the State of Idaho, and the purchaser's right to go upon the said lands or to remove any timber or trees therefrom shall without notice cease and terminate at the end of said three year period from the date of this contract."

There was no error in admitting this contract. Standing timber or stumpage is real estate. (C. S., sec. 5325; *Milwaukee Land Co. v. Poe,* 27 Fed. (2d) 625.) In *Severe v. Gooding,* 43 Ida. 755, 254 Pac. 1054, it was held that even grasses growing from perennial roots are real estate. It cannot be denied that, in so far as the granting clause above mentioned is concerned, the state employed both the language and substance of an absolute deed. That it intended to pass title to the timber is evident from the verbiage itself. The subsequent condition as to cutting and removing was a mere defeasance clause providing a reversion to the state of the title to all timber standing at the expiration of the contract. We are not unmindful that some jurisdictions construe such restrictive provisions as to cutting and removal to retain title in the grantor until the timber is actually

removed from the premises. A reading of these cases discloses generally the old difference between Tweedle-dum and Tweedle-dee in an effort to follow the title to the timber during the process of cutting and removing. The confusion arises from a defective interpretation of what we admit to be the majority rule as set forth in 38 C. J. 163, par. 41, as follows:

"A deed or contract for the sale of standing timber which limits the time for the cutting and removal thereof *operates* as a sale of only so much of the timber as is removed within the time limited, and confers no right to remove it after the expiration of the time specified." (Italics ours.)

This rule is but another way of saying that in such contracts as the one at bar title passes to all the timber, subject to a defeasance whereupon the title to all unremoved timber shall revert to the grantor. That this is the law in Idaho was explicitly announced in *Pike v. Board of Land Commrs.*, 19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447, where on page 284 the court declared:

"These lands are covered with a heavy growth of saw timber, and while the timber has been sold by the State, it still stands on the land; and the State has a reversionary right in the timber itself *to the extent of all that may remain standing* at the expiration of 20 years from the sale of the timber." (Italics ours.)

Under such rule such a contract *operates*, as already quoted from C. J., "as a sale of only so much of the timber as is removed within the time limited." But there must be a time certain when the title passes from the grantor. It cannot pass piecemeal to one tree at a time as the same is cut and removed, with intervals of ten minutes or ten years between. The only sound and logical rule is, we think, the one approved by this and numerous other courts, and nowhere more tersely stated than in *Anderson v. Miami Lumber Co.*, 59 Or. 149, 116 Pac. 1056:

"We agree with appellant's counsel that the present title to all the timber on the tract vested in appellant's prede-

cessor in interest, but it was an estate upon condition, liable to be defeated upon failure of the grantee to remove the timber within the time specified.''

We hold, therefore, that prior to the time of the fire the Humbird Lumber Co. had acquired from the state full title to all the timber, subject only to the defeasance incorporated as an integral part of the contractual consideration. It but remains to determine whether or not respondent plaintiff proved any right of action against the defendant. Where one complains of injury to or destruction of property caused by the negligence of another, he must show his ownership, possession or control of such property. (45 C. J. 1057, par. 627, note 9, and cases cited.) Plaintiff testified he bought the timber from Otrado and paid him for it. In this he was corroborated by Otrado. He also testified he had taken possession of the timber and removed some 350 cords.

Now, how did Otrado acquire ownership or possession of the timber, which, according to the testimony was transferred to plaintiff? Plaintiff sought to answer this by both oral and documentary evidence. He submitted, over defendant's objection, a contract entered into upon Sept. 7, 1927, between the Humbird Lumber Co. and said Otrado for sale of the timber. This so-called contract, entered into over two years after the fire, and, as it declared, over four years after the sale of timber described therein had been fully executed, consisted only of a recital and attestation of the original transaction long since closed, and was permissible for no purpose whatsoever. When on the stand, Otrado testified that he once had owned the timber, had bought it, paid $300 for it and had sold it to plaintiff. Was this sufficient to make out a *prima facie* case for plaintiff? Such we understand to be the law where no superior title is shown to exist at the time. It had been testified that Otrado was in possession at the time he sold to plaintiff; also that plaintiff had cut and removed 350 cords, possession being obviously pre-essential. This very contention was raised by the defendant in *Gillespie et al. v. City of Duluth*,

137 Minn. 454, 163 N. W. 779, and decided adversely, the court saying:

"There is no evidence that anyone else has or claims any interest in the property, and the case falls within the rule that actual possession of real estate is *prima facie* evidence of ownership in fee in the absence of evidence showing a superior title."

The defendant offered no word of evidence, oral or otherwise, of any coexisting superior title. It is true that plaintiff had introduced a contract showing that at one time title had passed from the state to the Humbird Lumber Co., and no competent evidence was introduced, showing its passing from that company to Otrado. As far as the record is concerned the lumber company may have sold to Tom, Dick and Harry. Nevertheless, Otrado swore he bought the timber and paid for it. There is no one to say him nay! and the presumption based on his testimony, standing unrebutted, confirms the title and possession acquired of him by plaintiff.

Appellant earnestly insists that under the peculiar facts, defendant could not be held guilty of negligence. In the case of accidental fires occurring on one's premises, the occupant owner is obligated to exercise only ordinary and reasonable care. Whether he does so or not depends upon the circumstances in the particular case. (45 C. J. 852, par. 273, note 35, and cases cited.)

In the face of the testimony introduced in this cause, defendant's alleged negligence was a matter to be determined by the jury from all the facts, conditions and circumstances testified to, *pro* and *con*. The jury found the defendant negligent; and there was competent evidence to warrant the finding.

Judgment affirmed. Costs to respondent.

Budge, C. J., and Givens, Wm. E. Lee and Varian, JJ., concur.

Petition for rehearing denied.