Argued June 12, affirmed November 6, 1957

# DUNHAM ET UX v. TAYLOR ET AL

317 P. 2d 926

*Joseph McKeown,* Coos Bay, argued the cause for appellants. With him on the briefs were Warren G. Lesseg, Medford, and McKeown, Newhouse & Johansen, Coos Bay.

*Irving C. Allen,* Medford, argued the cause for respondents. With him on the brief was Leo Levenson, Portland.

Before PERRY, Chief Justice, and ROSSMAN, LUSK, and WARNER, Justices.

WARNER, J.

The plaintiffs, R. C. Dunham and Ada J. Dunham, his wife, brought suit for an injunction restraining the defendants, J. R. Taylor and Viola H. Taylor, his wife, from taking and removing certain timber and logs from premises owned by the Dunhams. From a decree dismissing plaintiff's complaint and with judgment for the Taylors in the sum of $750 as attorney's fee, Dunhams appeal and Taylors cross-appeal.

The defendant J. R. Taylor operates under the assumed name and style of Dixie Lumber Company. Viola H. Taylor joined her husband in executing the

contracts of May, 1953, to which later reference will be made.

In its simplest terms, the real question to be resolved is the ownership of two separate but substantial quantities of timber and logs. One unit consists of approximately 40,000 feet of logs lying on ground within the boundaries described in what we hereinafter call the 1947 timber contract, previously cut by the Taylors, but which they failed to remove therefrom before March 11, 1954, the expiration date of that contract. The premises upon which these logs repose we will hereinafter refer to as Area A. The other unit of logs in controversy were stacked or "cold decked" on land contiguous to Area A, which we will hereinafter call Area B. The logs on Area B were cut on Area A and thereafter removed by the Taylors to Area B. Areas A and B are both timbered lands owned by the Dunhams and situated in Jackson County, Oregon.

The correct solution is dependent upon the proper construction of different logging contracts which the parties had entered into in 1947 and 1953 relating to the cutting of the timber on areas from whence the instant logs came and the time for the removal of the logs from the premises where cut.

The ultimate effect of the decree of the circuit court under the issues presented was a finding that the logs on Area A were the property of the Dunhams and the logs on Area B were the property of the Taylors. Both parties claim ownership in all the logs on Areas A and B, and hence we have the appeal from the Dunhams and a cross-appeal from the Taylors.

The contract of March 11, 1947, was between the Dunhams, as vendors, and other parties, as vendees. The then vendees afterward assigned their interest to the Taylors. Under the contract of that date the vendees

(assignors of the Taylors) purchased all merchantable timber "18 inches or over" in diameter measured breast high. The 1947 timber contract also included easements of way available for use of the Taylors during the entire period that the 1947 timber contract was in force and effect. The easements and roadways were over all tracts of land therein mentioned, and also over any other tracts in which the Dunhams had or might thereafter acquire for use "for roadway purposes * * * for the purpose of removing such timber and conducting such logging operations." Area B constitutes one of these other tracts over which easements were then given, but no part thereof is included in the 1947 timber contract as an area from whence timber was to be cut.

The right of the Taylors under the terms of the 1947 timber contract to cut and remove the timber or logs from Area A expired in seven years from the date of the contract, that is, on March 11, 1954. Upon termination, the Taylors were to forfeit all interest in the timber remaining.

On the fifth of May, 1953, ten months prior to the termination of the 1947 timber contract, the Dunhams entered into two additional and separate contracts with the Taylors. As a matter of convenience, we will refer to them as the first 1953 contract and the second 1953 contract.

The first and second 1953 contracts, although covering different land, are substantially identical in terms except in one respect and that is the presence of the following provision found in the first 1953 contract but not in the second one of that year:

"* * * Parcel # 2 hereinabove described, has heretofore been sold by the First Parties to R. H. Taylor and E. G. Taylor, co-partners doing business as 'Fir Pine Lumber Company', pursuant to a writ-

ten agreement dated March 11, 1947, and supplemental agreements thereto, and nothing in this agreement shall be construed to sell or convey any of the timber sold pursuant to said contract dated March 11, 1947, and supplemental contracts, and nothing in this agreement shall in any manner whatsoever be deemed or considered as any part of said contract dated March 11, 1947, and supplemental contracts, and reference thereto in this agreement is made herein for the express and exclusive purpose of defining the timber sold under this agreement, and it is further understood that Second Party claims certain rights under said contracts as the assignee thereof, and nothing contained in this agreement shall either expressly or impliedly affect the rights and liabilities of the parties;  *  *  *."

None of the timber cut under either of the 1953 contracts furnished any part of the logs in Areas A or B, the ownership of which is in dispute.

Because of our conclusion that the 1953 contracts in no way impinge upon the provisions of the 1947 timber contract or in anywise extend or enlarge the rights of the Taylors under the 1947 timber contract, we will not here further delineate the terms of the 1953 contracts except to observe that the contracts of that year were for the purchase and sale of timber *9 inches or over but not larger than 18 inches in size,* some of which was situated on identical lands described in the 1947 contract. The 1953 contracts also included large areas of Dunham properties adjacent to those described in the 1947 contract. The only place where the 1947 contract and the 1953 contracts have anything in common is limited to the description of approximately 21 quarter sections in the first 1953 contract, which are part of the 84 quarter sections described in the 1947 contract. Although the description of these 21 quarter sections is coterminous with its counterparts in the

1947 contract, there was no overlapping in the size of the timber to be cut in these overlapping areas. As we have previously stated, the size of all timber sold under the 1947 contract was limited to timber *18 inches and over on all land* described in that contract.

The Dunhams claim that the Taylors, prior to March 11, 1954, moved some 18-inch logs from Area A contrary to right. They also assert that in order to effect a removal of said logs before the terminal date, the Taylors had "skidded" them from Area A to Area B and there cold decked them on the adjacent lands. The Dunhams also say that this removal of the logs to the adjacent lands of Area B owned by them did not constitute a "removal" which would avoid the forfeiture clause of the 1947 contract.

The Taylors, on the other hand, contend:

(1) While admitting that their right to remove 18-inch timber from Area A expired under the 1947 contract on March 11, 1954, they take the position that because prior to that date they executed the 1953 contracts, whereby they purchased all the merchantable timber 9 inches and over being on Area B, their right to cut and remove the 18-inch timber from Area A was continued until May 5, 1956;

(2) That the 1953 contracts created new and independent contractual rights in their favor and gave them the right to remove, prior to March 11, 1954, 18-inch logs cut on Area A to Area B; and

(3) That they acquired a license from the Dunhams to move and stockpile their logs previously cut on Area A over to Area B including a right of way and easement therefor under the 1953 contracts.

In addition, and by way of cross-appeal, the Taylors allege the court erred in holding that all logs 18 inches and over lying in Area A and not removed by them

prior to March 11, 1954 (expiration date of the 1947 timber contract), were forfeited to the Dunhams.

In their reply, the Dunhams plead the exclusionary clause of the 1953 contract, above quoted, in rebuttal to the claims of the Taylors that their rights under the 1947 contract were enlarged by the provisions of the 1953 contracts.

■ To summarize: The claims of the Taylors rest primarily upon the "overlapping" of areas in the 1953 contract upon certain areas of operation which are included in the 1947 contract, and the Dunhams depend upon the forfeiture clause of the 1947 contract and the exclusionary clause of the 1953 contract to support their claims of ownership.

The forfeiture clause of the 1947 contract upon which the Dunhams depend, reads:

> "Second parties shall have a period of seven (7) years from and after the date hereof within which to complete the l o g g i n g operations upon said premises, * * *. If either of said sums be not paid within ten days after the commencement of either of said years and if all of said timber is now [sic] removed by the expiration of the seven year period, then second parties shall be considered as having forfeited all their right, title and interest in and to any timber remaining upon said premises and any and all payments that may have been made on account thereof, including said $5,000 down payment."

The purchase price payments stipulated under the 1947 contract were paid in full and no issue is presented with reference to that phase of the vendee's obligations.

The trial court, as we have previously indicated, found that the ownership of all timber 18 inches and over standing, lying and being upon Area A was vested in the Dunhams and that the ownership of logs of that

size removed from Area A, prior to the expiration of the 1947 contract reposed in the Taylors and notwithstanding that Area B was also land owned by the Dunhams.

We find nothing in the 1953 contract which expressly or impliedly creates new rights in the Taylors, as vendees, under the 1947 contract, or extends or enlarges any rights granted to them under that contract which can be successfully invoked by them in aid of their claim to the 18-inch timber cut into logs and left lying in Area A after March 11, 1954.

The forfeiture clause of the 1947 contract is plain and unambiguous, but so, too, is the carefully drawn exclusionary clause of the 1953 contract above referred to which was designed to keep the two contracts separate and distinct as to the rights of the Taylors, notwithstanding that the 1953 contract sold to them timber under 18 inches, some of which was in areas covered by the 1947 contract. We would be impelled to the same conclusion even if the exclusionary clause had not been written into the 1953 contract.

■ A contract for the sale of timber on a given tract of land with a proviso that it shall be removed prior to a time specified while vesting a present title in the grantee or vendee, is an estate upon condition liable to be defeated within the time specified. *Anderson v. Miami Lumber Co.*, 59 Or 149, 151, 116 P 1056; *Blackburn v. Maloney,* 189 Or 76, 79, 218 P2d 459.

■ The law is well settled that the interest of a purchaser under a timber contract of sale stipulating for removal within a specified period, terminates at the expiration date of the sales contract even though the purchaser, as here, has paid the consideration required by the contract. *Anderson v. Miami Lumber Co.,* supra, at p 151 et seq; *Kreinbring v. Mathews,* 81 Or 243, 249,

159 P 75; *Kee v. Carver,* 95 Or 406, 412, 187 P 1116; *Hodges v. Geo. T. Mickle Lumber Co.,* 124 Or 515, 520, 264 P 850; *Sandy Holding Co. v. Ferro,* 144 Or 466, 473, 25 P2d 561; *Blackburn v. Maloney,* supra. Also see 34 Am Jur 511, Logs and Timber § 30; 164 ALR 434.

The Taylor claim of right to remove all logs 18 inches and over lying and being upon Area A, which were not removed before March 11, 1954, rests solely upon *Anderson v. Moothart,* 198 Or 354, 358, 256 P2d 257. In that case Moothart was held to have a reasonable time to remove, as his own, all timber cut on plaintiff's premises prior to notice that his license to cut was revoked.

■ The Moothart case avails the Taylors nothing here. The sale of standing timber with the right of the buyer to cut and remove the same is a sale and not a mere license. *Schroeder v. Toedtemeier,* 184 Or 561, 581, 200 P2d 606; *Sequin v. Maloney-Chambers,* 198 Or 272, 284, 253 P2d 252; 256 P2d 514. Moothart operated under a license. Moreover, the Moothart license was an oral agreement without limitations of time for removal. Moothart's title to the timber on the tract never accrued until he reduced it to logs. To the contrary, the 1947 contract at bar being one of purchase and sale, the vendees became the owners of a present title to the timber subject to be defeated upon failure to remove it before the expiration date of the agreement. This distinction between a contract of sale and purchase is noted in the Moothart case, supra, at p 358.

We find no merit in the cross-appeal of the Taylors and hold the finding of the trial court with respect to the ownership of the 18-inch timber on Area A is correct. The 1947 contract expired on March 11, 1954, and with it went all of the Taylors' right, title and interest in or to all timber and logs *18 inches or over*

which they failed to remove before that date, and also all rights to roadways and easements for the removal of the 18-inch logs as stipulated in the 1947 contract. The termination of the vendees' rights and privileges under the 1947 contract did not, however, impair or limit in any way such rights and privileges as they subsequently acquired under the 1953 contracts.

■ The second question tendered for solution relates to the ownership of the 18-inch logs which the Taylors shortly before March 11, 1954, cut on Area A and skidded to and stacked on the adjacent Area B owned by Dunhams. The trial court found and decreed these logs to be the property of the Taylors.

The Dunhams lay no claim for any reparation or relief because of the use of Area B, and we have no obligation under the pleadings on this appeal to define the nature of Taylors occupancy of Area B as a temporary resting place for the logs they removed from Area A. Indeed, the Dunhams could not in this suit consistently surcharge the Taylors for this use of Area B because they claim to be the owners of this identical property cut by Taylors under the 1947 contract. We find nothing in the record indicating an oral license to the Taylors justifying their use of Area B as a situs for stacking any 18-inch logs moved there from Area A, nor anything warranting the conclusion that they had an implied license for that purpose. However, as we view the matter, the presence or absence of such a license is not determinative of the Taylors right of ownership in the logs in Area B if they crossed the borders of Area A before the date of the termination of the 1947 contract.

The position taken by the Dunhams is that the transport by the Taylors of the logs from Area A to Area B does not constitute a timely "removal" under

the 1947 contract. They argue that because the logs were only moved from one area of land owned by the Dunhams to an adjacent area owned by them and not moved from their last resting place prior to March 11, 1954, that such logs are a part of the timber and logs which fall under the forfeiture clause of the 1947 contract. In short, the Dunhams assert the logs on Area B are in the same legal category as those in Area A, which we have above held to be their property and not that of the Taylors.

Title to the logs on Area A had vested in the Taylors long before they removed them to Area B. *Anderson v. Miami Lumber Co.,* supra (59 Or 151). "Just how the removal is to be effected is not of interest to the seller. The great desideratum to him is the recovery of the possession of his land at the time specified." *Allen & Nelson Mill Co. v. Vaughn,* 57 Wash 163, 106 P 622, 624. Had the logs been then moved and placed upon the lands other than property of the Dunhams, no question would arise as to the title of the respondents. We can find no valid reason in principle why Taylors' removal of the same logs to Area B should or could work a divestiture of the Taylor title in the absence of a provision of the 1947 contract, which indicates that the forefeiture clause should apply to logs stacked on Area B or any other lands owned by the Dunhams.

*Hanifin v. C. & R. Const. Co.* (1943), 313 Mass 651, 48 NE2d 913, 164 ALR 458 presents a state of facts similar to those in the case at bar. There, Hanifin held contracts to cut timber on lands owned by the Commonwealth with time limitations for the completion of the cutting and removal of the timber by him and with a forfeiture clause providing that "any and all cut wood and timber remaining on said area after that date [the date of the contract's termination] shall be deemed

abandoned and become the property of the commonwealth." The timber thus cut and converted into lumber was, with permission of the vendor, stacked on other property of the Commonwealth adjacent to the cutting area as described in the contract, but not within the bounds of that area, although in the same ownership, as here. While reposing in the out-of-bounds area, it was destroyed through the negligence of the defendant construction company. It was urged that title to the cut timber in question had been forfeited to the Commonwealth because not "removed" prior to the terminal date of the cutting contract, and, therefore, Hanifin had no interest therein. The court dispatched that contention as follows:

"* * * The clauses in the instruments of sale providing for a reversion of title to the Commonwealth, however, would not operate to divest the title of the plaintiff, if on or before the specified dates, the timber was cut and *removed from the areas designated therein. Lawrence v. Gifford,* 17 Pick. 366, 367, 368; *Zirkle v. Allison,* 126 Va. 701, 704, 705, 101 S. E. 869, 15 A. L. R. 38."

\* \* \* \* \*

"* * * The fact that the lumber * * * was on premises owned by the Commonwealth, does not require the conclusion that the lumber was forfeited, in the absence of a finding that the parties intended that the forfeiture clause should apply to lumber stored on the Commonwealth's land. We think it follows that the auditor's finding establishes that the forfeiture clause was not applicable to the plaintiff's lumber, and that the title to it was in the plaintiff." (*Hanifin v. C. & R. Const. Co.,* supra, 48 NE2d 916, 917) (Emphasis ours.)

Referring again to the forfeiture clause of the 1947 contract, it will be observed that it operates after March 11, 1954, *only* upon "all right, title and interest

[of the vendees] in and to any timber remaining upon *said premises*." (Emphasis ours.) In this respect it is like the forefeiture clause in the Hanifin case, supra. "Said premises," of course, refers only to the particularly-described premises in the c o n t r a c t from whence the "18-inch or over" timber is to be cut, and the premises from which it must be "removed by the expiration of the seven year period."

■ Forfeitures are not favorites of the law, and the evidence to establish a forfeiture should be clear and conclusive. *Sheridan v. Pacific States Fire Insurance Co.*, 107 Or 285, 287, 212 P 783; *Schlegel v. Hough*, 182 Or 441, 449, 186 P2d 516, 188 P2d 158. To adopt the reasoning of the Dunhams with reference to the logs in Area B would give a tortuous construction to the forfeiture clause of the 1947 contract and expand it beyond the bounds of the original intent of the parties.

We find no error in the trial judge's holding that the Taylors are the owners of the logs which they removed from Area A to Area B prior to the expiration of the 1947 contract.

Affirmed. Neither party shall recover costs.