Argued January 22; resubmitted in banc without
oral argument August 14, reversed and remanded August 20,
reconsideration denied October 2, petition for review
allowed October 23, 1979

# JACKSON COUNTY,
*Appellant,*

*v.*

# COMPTON et al,
*Respondents,*

## (No. 76-2008-L-1, CA No. 11316)

599 P2d 1137

Thomas J. Owens, Medford, argued the cause and filed the briefs for appellant.

William B. Wyllie, Salem, argued the cause and filed the brief for respondents Compton.

Michael J. Morris, Portland, argued the cause for respondent First State Bank of Oregon, an Oregon corporation as Trustee of the Thomas E. Whittle Unitrust. With him on the brief were J. Rion Bourgeois and Evans, Anderson, Hall & Grebe, a Professional Corporation, Portland.

LEE, J.

**LEE, J.**

In this declaratory judgment proceeding, plaintiff, Jackson County (County), prays for a judgment declaring it to be the owner of certain stockpiled gravel; allowing access to the gravel for the purpose of removing it within a reasonable time; and granting damages in the amount of $10,000. In particular, the County asserts that defendants, First State Bank of Oregon (Bank), as trustee of a blind trust, Betty and John Compton (Comptons), and Thomas E. Whittle, are estopped from claiming ownership of the gravel because of certain assurances made by Whittle to the County. The trial court determined that no issue of fact existed and issued a summary judgment dismissing the County's complaint with prejudice on the ground that the County forfeited its ownership of the gravel when its right to remove the gravel expired. The issue is whether the trial court erred in granting the defendants' motion for summary judgment. We reverse with instructions.

On October 20, 1971, the County and Whittle entered into a gravel purchase agreement which, in pertinent part, provided:

> "The owners [Whittle] further agree that any rock manufactured by the county road department on the owners' premises shall be paid for at that time and *will belong to the county* road department and may be stockpiled on the premises of the owners. The county shall have the continuing right to remove said stockpiled rock until this agreement expires on January 1, 1974 * * *." (Emphasis supplied.)

This contract was later extended to January 1, 1976.

Early in 1975, the County became aware that Whittle intended to convey the land from which the gravel was being extracted to the Bank, so the right-of-way agent contacted him to discuss the effect of the transfer on the County's gravel removal rights. At that time, Whittle told the agent that he would "protect the County in the matter." On December 20,

1975, (after Whittle had conveyed to the Bank) he told the County that he no longer had authority to extend the gravel lease but that he had a "working relationship with the bank" and that he still had "influence" and that "everything would be all right."

Whittle's deed to the real property on which the County had stockpiled its gravel was delivered to the Bank on March 25, 1975. On December 31, 1975, the Bank sold the property on contract to the Comptons. *Neither document mentioned the stockpiled gravel.* After January 1, 1976, (the extended expiration date of the agreement between Whittle and the County) the Comptons refused to permit the County to remove gravel from the stockpiles.

The terms of the contract describe a "profit a prendre" (profit)—a right to take something from the land of another. *High v. Davis,* 283 Or 315, 322, 584 P2d 725 (1978), 25 Am Jur 2d, Easements § 4 (1966). Profits may include, and this one does, the privilege to acquire, through severance, ownership of some part of the physical substances included in the land subject to the profit. In such cases, the rights in the physical substance severed are changed from interests in land to interests in chattels personal owned by the owner of the profit. Restatement of Property § 450f (1944), *see also* Hahner, *An Analysis of Profits a Prendre,* 25 Or L Rev 217, 218 (1946). Therefore, under the terms of the contract and profit law, it is clear that the stockpiled gravel constituted personal property which belonged to the County.

The trial court relied, by analogy, upon the timber cutting case of *Dunham et ux v. Taylor et al,* 211 Or 618, 317 P2d 926 (1957),[1] in denying relief. Such

---

[1] The contract relied upon in *Dunham et ux v. Taylor et al,* 211 Or 618, 624, 317 P2d 926 (1957), provides for forfeiture as follows:

> "* * * if all of said timber is now [*sic*] removed by the expiration of the seven year period, then second parties shall be considered as having forfeited all their right, title and interest in and to any timber remaining upon said premises * * * "

The instant gravel removal agreement contained no forfeiture language.

authority might be persuasive here, were it not for the overriding element of equitable estoppel present and pleaded in this case.

The controlling instrument is the contract between the County and Whittle—not Whittle's deed to the Bank nor the Bank's contract with the Comptons. Personal property does not ordinarily pass with a deed to real property—certainly not without some reference to it. It follows that neither the Bank nor the Comptons acquired any interest in the gravel by those instruments.

Whittle testified on deposition that the Bank was fully cognizant of the fact that the stockpiles belonged to the County. The Comptons could not receive anything more than the Bank had. Whittle could not have claimed a forfeiture against the County because he was equitably estopped to do so. We fail to see how the Comptons could acquire any forfeiture right from the gravel agreement when they were not parties to it and there was no assignment of it to them.

Assuming, arguendo, that the Comptons did acquire something by virtue of the gravel agreement because the stockpiles were on land they contracted to purchase, that something would be derived only as successors in interest to Whittle. It would be unconscionable to permit the Comptons to exercise Whittle's right, if any, of forfeiture without being chargeable with Whittle's conduct, which lulled the County into a false sense of security.

Forfeiture is a harsh remedy which is generally disfavored. 17 Am Jur 2d, Contracts § 500 (1964). One who claims forfeiture under a contract must bring himself strictly under its terms. *Rainier v. Masters,* 79 Or 534, 539, 154 P 426 (1916). Compensation rather than forfeiture is favored by the courts. *Clanton v. Oregon Kelp-Ore. Co.,* 135 Or 321, 331, 296 P 30 (1931).

[421]

We hold that the trial court erred in granting summary judgment for defendants.

Reversed and remanded.

**GILLETTE, J.,** dissenting.

The record in this case clearly establishes that the county, through its agents Tecmire and Carstensen, was aware from at least as early as May, 1975, that the property in question had been or was about to be conveyed to the defendant bank in trust. The county was certainly aware by July of the same year that the property had been conveyed. Uncontradicted testimony from Carstensen indicates that Tecmire actually contacted the bank sometime during the year. Under these circumstances, and whatever may have been the nature of the assurances provided by Mr. Whittle to Carstensen and Tecmire, it seems to me to be patent that the county had adequate notice as to where the actual power with respect to the property lay, and cannot now claim to have been misled by Whittle's assurances. Indeed, the very fact that Tecmire contacted the bank shows that the county was aware that the future of their ability to extract and store gravel on the property in question was now at least partly in the hands of another party. Under such circumstances, I cannot understand how the bank or the bank's successors in interest, the Comptons, can be deemed to have been bound or estopped by anything Whittle may have said to Carstensen and Tecmire. The county was on notice as to the true status of the property and was obliged to protect its own interest without unreasonably relying upon Whittle. The county failed to do so.

This proper view of the facts, however, does not solve the problem presented by the case.

Contrary to the majority, I read the pertinent portion of the contract between Whittle and the county as providing for a forfeiture. The provision,

"The county shall have the continuing right to remove said stockpiled rock *until this agreement expires* * * *," (Emphasis added)

seems to me to make absolutely clear that the license, *i.e.,* the right to remove stockpiled gravel *expires when the agreement does.* This is a forfeiture, plain and simple, and the absence of the word "forfeit" or "forfeiture" from the instrument is of no moment. Establishing that there was a forfeiture as between the county and Whittle does not, however, settle the ownership of the rock:

1. Whittle has released his rights in the underlying estate. The right to a forfeiture as to Whittle should be deemed extinguished. Even were it not so, he would be estopped by his conduct from claiming the forfeiture.

2. It is equally apparent that the bank, having sold the property while the license to store the gravel was still in force, has no interest in the gravel now.

3. The sole issue, then, is between the county and the *Comptons vis-a-vis* the gravel.

The majority holds that the Comptons are not entitled to a forfeiture. They are, rather, held to be property owners subjected to a continuing trespass by the property of another (the county), entitled to damages therefore, but obligated to grant the county a reasonable time within which to remove the gravel. With respect, I cannot agree.

The Comptons, as successors in title to Whittle, took the property in question subject to the valid lease. During the term of the lease, they had no right to interfere with the county's exercise of any of its rights under the lease. But, once the lease had expired, they were entitled to treat their property in any manner consistent with the fact of expiration. Expiration—under my reading of the pertinent instrument—meant forfeiture.

No inequitable conduct of the Comptons was responsible for the county's current awkward position:

[423]

the county, by inattention, negligence, or for other reasons not apparent in this record, failed to preserve its rights in the gravel it had extracted. The contract—which the county must have understood—calls for forfeiture. The trial court was correct in so holding, and should be affirmed.

SCHWAB, C.J., and BUTTLER, J., join in this dissent.