Argued September 24, reversed October 13, 1914.

## NEILSON *v.* McNEIL.

(143 Pac. 1119.)

**Logs and Logging—Title—Construction of Contract.**

1. Where the former owner of land had sold the timber thereon, to be removed within a certain time, and then conveyed by quitclaim to a corporation, which in turn conveyed to plaintiff, reserving the timber "in accordance to the contract" of sale, and a mutual release was afterward executed by the sellers and buyers of the timber and the corporation, after which the corporation made the sale of the timber under which defendant claims, the reservation in the conveyance to plaintiff was inoperative after the release, and plaintiff is the owner of the timber on the land.

From Coòs: JOHN S. COKE, Judge.

Department 2.    Statement by MR. JUSTICE McNARY.

Declaring that his premises are being invaded and the timber removed therefrom, John Neilson, plaintiff herein, beseeches a court of equity for an injunction against the defendant, and for damages in the sum of $400.

Defendant in an amended answer denies the assertions set forth in plaintiff's complaint, and alleges: That in May, 1911, the Bandon Heights Land & Trust Company, a corporation, was the owner in fee simple of the land in question, being located in Coos County; that plaintiff has been, since the organization of the company, a stockholder, and was in January, 1912, elected director of the corporation; that in June, 1911, the corporation conveyed the premises to plaintiff, however, expressly reserving in the instrument of conveyance all the merchantable timber lying, standing, and being on the land; that at a meeting of the directors of the company during the month of May, 1913, at which meeting there were present all the directors of the company, including plaintiff, the com-

pany sold the timber to one H. H. Dufort, who a month later made conveyance thereof to defendant. Concluding, it is recounted that plaintiff made no objections to the sale of the timber to Dufort, and that in equity he should be estopped from asserting any claim to the timber. In the reply, following a denial of the statements set forth in the amended answer, plaintiff alleged matters explanatory of the ''reservation clause'' in the deed from the Bandon Heights Land & Trust Company to plaintiff. The learned Circuit Court, after a studious consideration of the case, entered a decree confirming title to the timber in defendant. This appeal proceeds from that decree.    REVERSED.

For respondent there was a brief and an oral argument by *Mr. G. T. Treadgold.*

For respondent there was a brief and an oral argument by *Mr. F. J. Feeney.*

MR. JUSTICE McNARY delivered the opinion of the court.

A number of questions are presented by this appeal which would require consideration if it were not our belief that but a single problem, which arises in the early stages of the transaction, is decisive of those matters which subsequently follow. This point presents itself in the construction of the clause of reservation embodied in the deed executed and delivered by the Bandon Heights Land & Trust Company to plaintiff. In the belief that a clarification will follow from a brief review of the history of the case, we shall treat each event chronologically. In the fall of 1910, J. L. Kronenberg and Esther M. Lockhart, owners of the property by a common estate, entered into a contract

with A. F. Estabrook Company, for the sale and purchase of the merchantable timber on the lands, to be removed withon a period of three years, with the privilege of an extension of time, conditioned upon a toll of $1 per thousand feet. During the early part of February following, the owners conveyed the premises by quitclaim deed, to the Bandon Heights Land & Trust Company, and at a time practically contemporaneous Kronenberg and Lockhart assigned their interests in the timber to the Bandon Heights Land & Trust Company. In June of that year, the Bandon Heights Land & Trust Company conveyed the premises by an instrument containing covenants of warranty to plaintiff, which conveyance contained the following clause:

"Reserving the timber to the Bandon Heights Land & Trust Company, in accordance to the contract with A. F. Estabrook Company."

In the late spring of 1913, J. L. Kronenberg, Esther M. Lockhart, the Bandon Heights Land & Trust Company and the A. F. Estabrook Company, entered into an instrument termed a "release," whereby they undertook to exonerate each other from any liability which might accrue from the sale of the timber on the premises by reason of the contract between Kronenberg and Lockhart on the one part and the A. F. Estabrook Company on the other, the following excerpt being the keynote of the agreement:

"Now, therefore, witnesseth that we, J. L. Kronenberg, Esther Lockhart, Bandon Heights Land & Trust Company, a corporation, and the A. F. Estabrook Company, a corporation, and each and every of them, the said J. L. Kronenberg, Esther Lockhart, Bandon Heights Land & Trust Company, a corporation, and A. F. Estabrook Company, a corporation, doth and do hereby release the others, and each of the others of

them, their heirs, executors, administrators, successors and assigns, and their and his and her and its estates and effects, from all and every of the terms, conditions and obligations, covenants, agreements, claims and demands of whatsoever kind or nature which may or can arise out of and by reason of the said agreement made and executed on the said 3d day of October, A. D. 1910, relating to the sale and purchase of the timber on the lands hereinbefore described, and each and every of the parties are hereby released from any and all claims against the other or either of the others under said agreement, and each and all of said parties and all who may claim under them or through them or either of them shall stand in the same position as if said agreement had never been made and executed, and said agreement shall be henceforth considered as having been fully executed in each and every particular by each and every of the parties thereto; and the said agreement shall henceforth be considered and held for naught.''

The solution of the legal controversy is dependent upon the construction given to the clause of reservation, set forth in the deed from the Bandon Heights Land & Trust Company to plaintiff, and the instrument of release executed by all the parties concerned in the timber and the timber contract. The deed under which plaintiff obtained title would convey the entire property from the original owners, save those contractual rights which the grantor had, by virtue of the contract, with the A. F. Estabrook Company. A reading of the reservation will show that plaintiff's grantor did not reserve the whole property in the timber, but merely such rights as were created by the contract with the A. F. Estabrook Company. This is too apparent on the face of the deed to admit of doubt or question. As against plaintiff, the A. F. Estabrook Company retained and held the right to enter upon the lands for

the purpose of cutting and removing the reserved timber therefrom. Therefore, when at a subsequent time, plaintiff's grantor, the Bandon Heights Land & Trust Company, and the A. F. Estabrook Company, who held the right under the timber contract with the original owners of the premises, released and discharged each other from further performance of the terms of the contract and all liabilities issuing therefrom, no rights of property in the timber remained in the Bandon Heights Land & Trust Company, and plaintiff then became the absolute owner of the property, freed from any contractual rights of or duties owing to A. F. Estabrook Company. Therefore we are of the opinion that the subsequent transactions presented by the record are inefficacious, in view of the deed and instrument of release.

Let the decree of the lower court be reversed and a decree entered confirming title in the timber in plaintiff without damages.                                    REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.