Argued May 2, reversed with directions June 15, opinion
modified, petition for rehearing denied July 13, 1960

# EMERSON *v.* HOOD RIVER COUNTY ET AL

### 353 P. 2d 247
### 354 P. 2d 74

*Denton G. Burdick, Jr.,* Portland, argued the cause and filed briefs for appellant Walton.

*Gunther F. Krause,* Portland, argued the cause for appellants Hood River County, Sheldrake, Hukari and Kreig. With him on the briefs were Teunis J. Wyers, Hood River, and Krause, Lindsay & Nahstoll and Alan H. Johansen, Portland.

*Roger L. Dick,* The Dalles, argued the cause for respondent. On the brief were Dick & Dick, The Dalles.

Before McAllister, Chief Justice, and Warner, Perry, Sloan, O'Connell, Goodwin and Millard, Justices.

GOODWIN, J.

Hood River County and the other named defendants appeal from a declaratory decree entered in the circuit court for said county which determined that the plaintiff, Emerson, was the owner of certain valuable timber at a date four years earlier when the defendants removed and disposed of it.

The suit was commenced as a suit to quiet title, but, despite an admonition by the trial court that the case was not a proper case for doing so, the parties, by stipulation, converted the suit into a proceeding for a declaratory judgment. Counsel on appeal, who were not counsel at the trial, suggest that the county may have been improvident in so stipulating. We concur.

■ The county contends here that the circuit court record, despite the form of trial, is reviewable as a decree in equity. The county assigns error to the find-

ings, conclusions, and decree which deprived the county of a valuable public property. We consider the decree to be subject to review as a declaratory decree under ORS 28.070, even though it would have been in order for the trial court to dismiss the suit and leave the parties to their remedy in a law action, which, the record discloses, was pending at the same time.

On May 5, 1941, the county entered into two contracts with one Beldin to sell certain tax-foreclosed lands. One tract contained 320 acres, the other about 465 acres. The contracts provided:

"Price is for land only,
"Standing timber to be cruised and paid for on basis of cruise."

In due course, on May 2, 1945, Beldin completed his payments and the county conveyed the land to him by two deeds, each of which contained this provision:

"* * * reserving, however, unto the Grantor all the timber on said premises together with the right to build lumber and logging roads thereon where ever the same may be found convenient to the removal of said timber and also reserving the right to construct mills and other necessary and convenient structures, loading docks, etc., in connection with the removal of said timber. Grantor shall pay the fire patrol on said timber."

Beldin swore he bought only the land for pasturage, and did not intend in May 1945 to buy timber. Emerson, the present owner of the land, is also a stockman, and he admitted that he bought the land primarily for grazing.

In October 1951, after from one-sixth to one-third of the timber had been removed, in 1946 and 1947, by other purchasers from the county, Beldin conveyed

the land to Emerson by a deed containing the following provision:

"EXCEPTING THE FOLLOWING RESERVATIONS, TO-WIT:

"* * * * *

"5. Reservation of all timber on the South half of said Section 4, and rights and easements in connection with removal of same, contained in deed from Hood River County to J. O. Belding [sic] and Adele M. Belding [sic], husband and wife, recorded * * *.

"6. Reservation of all timber on Parcel 2 and rights and easements in connection with removal of same, contained in deed from Hood River County to J. O. Belding [sic] and Adele M. Belding [sic], husband and wife, recorded May 4, 1945, in Book 31 at Page 621, Deed Records Hood River County."

The land still contained nearly two million feet of merchantable timber at the time of the conveyance to Emerson in 1951. In January 1954, before any further logging had been done by persons claiming under the county, Emerson filed a suit to quiet title. The county in due course filed its appearance therein.

While the quiet-title suit was pending, the county, now claiming to have acted under the reservation in its deeds to Beldin, sold the timber to the defendant Walton. All the timber was removed between August 1954 and September 1957.

From 1946 to 1950, Beldin paid the fire patrol charges despite the provision of the deeds that the county would pay such charges. After October 17, 1951, Emerson paid the fire patrol levy. The circuit court did not consider this somewhat anomalous factual problem because it held that the county lost the timber for another reason, the passage of time.

The fire patrol presumably benefited the successive landowners by way of protection to young growth and to range land. The nominal charges were insufficient, standing alone, to afford a ground of decision in this case in any event.

The trial court found that it would have been possible to remove all the merchantable timber in two logging seasons of eight months each. The evidence fully supports the finding. All the timber involved in this suit was removed in three seasons. It is the beginning date of the logging operation which bears on the reasonable-time question.

The court below concluded that by delaying the sale of the timber from May 1945 until August 1954, when logging commenced, the county acted unreasonably and thereby lost its rights under its reservation of the timber. It followed that Emerson was entitled to a fee simple estate in the timber as well as in the land as of August 1, 1954. The court did not decide at what exact point of time within the nine years a reasonable time had run and the county had lost its timber. The decree amounted to a judicial declaration on the equity side of the court that the defendants were trespassers. As pointed out earlier, the defendants should have refrained from a stipulation which deprived them of a proper trial on the trespass question.

While the foregoing statement of facts is greatly condensed, it sets out enough of the history of the various transactions to provide a background for the issues. In speaking of timber, we will refer to merchantable timber. The deeds in question did not qualify or define the term, but mention only "timber".

Counsel have submitted numerous issues in the briefs and arguments, but the case turns on the owner-

ship of the timber at the material times, and the other issues are peripheral. For example, a contention is made by Emerson that the county had no right to include in the sale to Walton any timber which had become marketable between 1945 and 1954, even if the county should prevail with reference to the main body of timber. There is no evidence in the record concerning what, if any, measurable growth occurred during the nine years, or that any measurements were made that would affect the rights of the parties with reference to accretion in the merchantable timber. So, while Emerson is correct on this point, there is nothing before this court on the quantity of immature trees, if any, which may have grown to merchantable size during the intervening years. The record leaves the entire matter to speculation.

The county has contended throughout the litigation that its ownership in the timber was absolute and perpetual, by virtue of the reservations in the deeds. Emerson, on the other hand, has contended that he acquired all the timber, not limited to new growth, by the lapse of nine years between the date of the county's reservation and the sale to Walton. For the purposes of this case, and because of the absence of evidence in the record, the contending parties are entitled to all or nothing as far as the timber is concerned. The timber has long since become impossible of accurate measurement.

The principal issues are whether the passage of a reasonable time in this case will divest the county of its timber, and, if so, whether the trial court correctly held that a reasonable time had expired prior to the logging by Walton.

■ In a proper case, time will run against a county. In matters of contracts and conveyances where the

county deals as a vendor or a grantor of lands, similar rules apply as in sales between private parties, subject to statutory regulation in particular cases. *County of Lincoln v. Fischer et al,* 216 Or 421, 339 P2d 1084 (a timber case), and cases cited at page 436 thereof. The effect of Oregon statutes will be considered in connection with what is a reasonable time.

■ The next question is whether the running of a reasonable time will operate to *divest* title to timber reserved in a deed as well as to *revest* timber in a landowner who has sold cutting rights but who has retained the land. This is settled in Oregon by *Clyde v. Walker,* 220 Or 137, 348 P2d 1104, 1106, where earlier decisions are approved and followed. *Clyde v. Walker,* supra, also removed any doubt which may have existed whether a reservation should be treated differently from an exception in such cases. The case points out that since *Coquille M. & T. Co. v. Dollar Co.,* 132 Or 453, 285 P 244, the rule has been the same. If the parties intend to retain an unlimited time for the removal of timber, the intent must be established by unequivocal language in the conveyance and the law will not presume such an intent in the absence of a definite expression.

The county all but confesses that no intent to create a perpetual right can be found in its deeds, but contends that if it fails in its claim that it should be treated differently from other timber owners in respect to the interest reserved by the deed, then, in any event, it should be given more time than was allowed by the trial court.

Thus, the final question remaining is whether the trial court should have allowed the county more time under the facts of this case. If a reasonable time had elapsed, the county is divested of its timber as com-

pletely as if it had deeded it away in the first instance. If not, the decree must be reversed.

■ The trial court concluded, correctly, that the time began to run against the county from the date of its reservation of the timber in the deed dated May 2, 1945. The 1941 contract contemplated a different situation entirely, and became obsolete with the delivery of deeds containing different terms. The county urges that the running of time was broken by the deed from Beldin to Emerson on October 20, 1951. The Beldin-Emerson deed contained a recognition of the county's interest in the timber. Therefore, the county claims that any further running of time would date from the 1951 deed only. The trial court decided that the exception in the Beldin-Emerson deed created no new right in the county, but merely protected Beldin from the onus of his warranty in the event the county still had some interest. In this respect, the trial court analyzed the transaction correctly.

An intervening deed was held to create no new right in a substantially similar situation in *Nelson v. McKinney,* 163 Wash 529, 537, 1 P2d 876, 879 (1931), where the elapsed time was 22 years. And see *Neilson v. McNeil,* 72 Or 549, 143 P 1119, where a reservation of timber in a deed referred to a prior contract, and was held to create no new interest, but merely to reserve such interest as the grantor may have had.

■ We have yet to decide whether, in all the circumstances, nine years was a reasonable time for the county to delay in disposing of its timber.

The transcript reveals that Emerson tried the case on the theory that the reasonableness of the time should be based primarily upon the actual number of logging seasons required under normal conditions in the region to remove a similar amount of timber from similar

terrain. The county contended, erroneously, that it could take forever if it wanted to. This gave the trial court little choice.

The county now contends that no matter what the evidence may show to be possible, or even normal, in the time consumed by logging, there must be an additional time factor taken into consideration by the court in deciding upon over-all reasonableness.

■ The total reasonable time factor may be described as the time it would take an ordinary owner to dispose of similar timber, giving due regard to the intent of the parties if it can be determined. As an aid to determining intent, the courts have tried to work back from such considerations as the amount and distribution of timber over the terrain, the market conditions, the owner's desire to hold the timber as an investment, his duty not to encumber the land of another unreasonably, and any other conditions that might surround such a sale. In this case, a proper consideration is the duty of the county to dispose of tax-foreclosed timber lands in which there is an element of public interest. ORS 275.090.

Emerson has cited no case in which the passage of nine years was held to be sufficient to work a forfeiture of reserved timber, even between private parties. The trial court apparently was given no assistance by either party in this respect. Defendants offered no evidence or cases in the trial court on the reasonableness of time, having tried the case below on the theory that the county's interest was perpetual.

We will attempt to outline briefly the Oregon decisions which have measured reasonable time; there are only four which deal directly with what is or is not a reasonable time. (For the views of courts in other states, where logging and lumbering conditions

are not always similar to our own, see Annotation, 164 ALR 423.)

(1) *Hughes v. Heppner Lumber Co.*, 205 Or 11, 283 P2d 142, 286 P2d 126: Merchantable timber was conveyed by deed in 1939. Logging operations ceased in 1948, at which time the remainder of the timber could have been removed in from four to six months. All the timber was in deep ravines and on mountain tops. In 1951, the owner of the land brought suit to quiet title. The court held that a reasonable time for removal had elapsed prior to 1951. WARNER, J., dissented on the ground that the owner of the land did not sustain the burden of proving that a reasonable time had elapsed. The only evidence was that in 1939 all timber which could be marketed for a profit could have been removed in two years.

(2) *Rayburn et ux v. Crawford et ux,* 187 Or 386, 211 P2d 483: No time had elapsed prior to the suit. The case was remanded to determine reasonable time. This court quoted with approval *Union Saw Mill Co. v. Agerton,* 181 Ark 144, 147, 25 SW2d 13, 14, as follows:

"* * * What is a reasonable time depends upon circumstances, such as the quantity of timber, the character of it, facilities for marketing it, and all other facts and circumstances showing the conditions surrounding the parties at the time of the execution of the contract. In cases of dispute, this becomes a question of fact for the determination of the court or of the jury trying the case * * *."

(3) *Parsons v. Boggie,* 139 Or 469, 11 P2d 280: Contract was entered into in 1906. No timber had been removed at the time the suit was brought in 1931. As to what constitutes a reasonable time, the

court said: "* * * This question depends upon the particular facts in each case, but none of the adjudicated cases hold that twenty-four years would be a reasonable time in which to remove the timber from a tract of land of 160 acres * * *."

(4) *Clyde v. Walker,* 220 Or 137, 348 P2d 1104, supra: The deed was executed in 1948. In 1949 the plaintiff vendors commenced suit in California to reform the deed, which suit was pending when plaintiffs brought suit in Oregon to declare that defendant's interest in the timber had expired. This court held that the reasonable time for removal of the timber would not commence until after the California suit was disposed of, and remanded the case to determine what was a reasonable time.

The four mentioned Oregon cases appear to be the only ones where the question has directly arisen. Many other cases, such as *Sandy Holding Co. v. Ferro,* 144 Or 466, 25 P2d 561; *Coquille M. & T. v. Dollar Co.,* 132 Or 453, 285 P 244, supra; *Kreinbring v. Mathews,* 81 Or 243, 159 P 75; and *Anderson v. Miami Lumber Co.,* 59 Or 149, 116 P 1056; concern themselves with deeds in which a specific time is contemplated, so they are of little assistance in determining what might be reasonable.

The language quoted from *Rayburn v. Crawford,* supra, affords a helpful guide. Reasonable time depends on all the circumstances, not just the number of man-days in the woods which might be required to cut and yard a given amount of timber.

An existing condition which confronted Hood River County during the material time was the requirement that the county commissioners act in accordance with Oregon statutes in dealing with tax-foreclosed land.

ORS 275.030 provides that the county court may,

whenever it deems it in the best interest of the county to do so, sell or convey any real estate owned by the county and not in use for county purposes.

ORS 275.110 provides that when the county court deems it to be in the best interest of the county to sell tax-foreclosed lands, or any interest therein less than the whole fee, it shall enter an order directing the sheriff to make the sale.

ORS 275.290 provides that when timber is sold the county may impose regulations and conditions on the purchaser as to cutting and slash disposal. Subsection (2) provides that the purchaser may be required to furnish a bond, and sub-section (3) provides that if the sale of timber is made for a term of years, all rights will revest in the county at the expiration of that term.

The defendants in this case contend that the foregoing statutes grant the county indefinite discretion in selling timber when "the county court * * * deems it to [be in] the best interest of the county * * *." ORS 275.030. We do not believe that such broad discretion is contemplated, but neither do we believe the statutes can be ignored in measuring reasonable time as against the county. The statutes obviously create a consideration not present in dealings between private parties.

There was no evidence in the trial below that the county had a buyer at an earlier date for the particular timber sold to Walton. There was evidence that a portion of the timber reserved had been sold shortly after the conveyance to Beldin, and there was evidence that a favorable market existed for pine timber generally, but no evidence was specifically related to a market for the balance of the timber in question. Nor was there any evidence that any buyer offered

to buy or considered that it was economically feasible to log it at the earlier date. There was evidence that the price of similar timber had advanced each year and was still advancing in 1954. The trial judge took the market conditions into consideration in his opinion. But in the absence of evidence to the contrary, it may have been entirely reasonable for the county court to hold the timber during a period of a rising market in an effort to recover for the taxpayers as high a value as possible. It is also important to note that the county is not in the logging business and that it could do nothing with the timber until it could find a suitable buyer.

Ordinarily a county, paying proper attention to its business, will spell out in its deeds a perpetual reservation or the exact time contemplated by the parties, but its failure to do so in the instant case should not be converted into a conveyance of a valuable public property by the operation of a relatively short period of time compared to the life-cycle of a forest.

In the instant case, the plaintiff had the burden of proof that a reasonable time had passed. We are unable to find that he produced such proof. As we have pointed out, the proof covered only a part of the over-all circumstances bearing upon reasonable time.

We recognize that the trial judge, particularly one with the skill and experience possessed by the judge who tried the case below, is in the best position to decide a question of fact. Reasonableness, in this case, however, is not an unmixed matter of fact. Rules of law are to be considered as well as facts. In an equity case, this court has the duty to try the case *de novo* upon the record, and it must test the findings of the trial court against the testimony and reverse the decree if it is unsupported in law or fact. This duty is

clear even though the error may have been invited by the theory on which the case was tried. We note that the trial judge in his well-reasoned opinion deplored the result he felt forced to reach by the limited choices available between the theories of the parties. Considerations for this court in this case must include all evidence bearing upon reasonable time, together with the statutes relating to county-owned lands and the public policy of preserving public property for the benefit of the taxpayers.

Emerson was seeking a forfeiture under a deed which was ambiguous. Such a suitor has a burden to prove more than the existence of a ready market for logs and that the timber could have been logged easily in two or three seasons. Confronted with a failure of proof of unreasonableness on the part of the county in the matter of the time in which it should have disposed of its timber, we hold that it was error to divest the county of its timber as of August 1954, and the case must be reversed.

Plaintiff is entitled to a decree quieting title in his land as prayed for in his complaint except that the date must be the date of the decree originally entered, May 25, 1959.

Other issues were tendered in this appeal, but we believe the above holding disposes of the case. The timber having been removed, the numerous other matters presented are now moot.

Reversed with directions to enter a decree for the plaintiff quieting title as of May 25, 1959. Each party must bear its own costs.

## ON REHEARING

ON RESPONDENT'S PETITION FOR REHEARING

Dick & Dick, The Dalles, for the petition.

Before MCALLISTER, Chief Justice, and WARNER, PERRY, SLOAN, O'CONNELL, GOODWIN and MILLARD, Justices.

GOODWIN, J.

On petition for rehearing, the plaintiff-respondent called to the court's attention the pendency of an action in the Circuit Court for Hood River County in which the plaintiff is seeking damages for the removal of timber by the defendants from the land of the plaintiff.

The plaintiff contends that notwithstanding our holding that the defendant Hood River County did not lose its rights in the timber which was merchantable at the time of its deed in 1945, the county could not, after its conveyance, exercise any rights in the land or timber thereon which became merchantable thereafter.

■ The deed contained a reservation of "all timber" without qualification that the timber be merchantable. However, this court held in *Arbogast et al v. Pilot Rock Lbr. Co.*, 215 Or 579, 586, 336 P2d 329, that "all timber" means all timber which, on the date of the contract, was of a size suitable for manufacturing into lumber. And see cases cited therein.

■ Accordingly, the timber reserved to the county, and which our opinion held the county had the right to sell in 1954, was the timber which was merchantable in 1945 when the county deeded the land to the plaintiff's grantor. *Doherty et ux v. Harris Pine Mills*, 211 Or 378, 425, 315 P2d 566. Any trees which became merchantable timber after the conveyance accrued to the benefit of the landowner, and were not subject to the reservation in the deed. The county could have logged the merchantable timber immediately, and its delay in removing the timber could not operate to divest the landowner of young growth, saplings, and the like, some of which may have become merchantable timber during the nine years

which elapsed before the county removed the reserved timber. All the earlier Oregon decisions are considered at length in Mr. Justice BRAND's opinion in *Doherty et ux v. Harris Pine Mills,* supra (211 Or at 419 et seq.).

Our former opinion is modified to withdraw any implication that the landowner is foreclosed in his pending trespass action from proof, if any he may have, that timber was wrongfully removed by the defendants, limited, however, to timber that was not merchantable in 1945 but became merchantable thereafter.

The decree appealed from was entered in the form of a declaratory decree, and the mandate should provide for the entry of an amended decree declaring the rights of the parties in accordance with the views expressed in our former opinion as modified herein.

The petition for rehearing is denied.