Argued May 5, affirmed September 10, 1969

FRANKE ET AL, *Appellants, v.* WELCH ET AL, *Respondents.*

WILSON ET UX, *Appellants, v.* WELCH ET AL, *Respondents.*

458 P2d 441

*Claud A. Ingram*, John Day, argued the cause and filed briefs for appellants.

*William A. Palmer*, Portland, argued the cause for respondents. With him on the brief were Casey, Palmer & Feltz, Portland, and James F. Bodie and Bodie, Minturn & Glantz, Prineville.

Before McALLISTER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## O'CONNELL, J.

This is a suit to quiet title to certain lands conveyed to plaintiffs by defendants Welch and others. Plaintiffs appeal from a decree in favor of defendants.

On July 1, 1946 the Blue Mountain Mills partnership conveyed certain lands to the predecessors in title of plaintiffs Franke and on February 14, 1947 conveyed other lands to the predecessor in title of plaintiffs Wilson. Each deed, after describing the land, contained the following clause: "Save and except all timber growing, grown or to be grown thereon."

In 1948 the partners of Blue Mountain Mills formed a corporation named Blue Mountain Land Company and transferred to the corporation all of the timber, timberlands and cutting contracts owned by the partnership. The capital stock of the corporation was later acquired by Hudspeth Sawmill Company. Blue Mountain Land Company was dissolved and its assets were distributed to Hudspeth Sawmill Company. When Hudspeth Sawmill Company indicated its intention to start logging operations on the land in question plaintiffs brought the present suit to quiet title.

Plaintiffs contend that the reservation of "all timber growing, grown or to be grown" operates only to reserve to the grantors "merchantable timber existing at the time of the execution of the deed with a right to remove the same within a reasonable time together with the growth during that reasonable time for removal." Defendants contend and the trial court held that the deed reserved to the grantors a perpetual right in the timber.

There is nothing to preclude an owner of timberland from conveying or reserving all of his interest in the timber separate from the land. Whatever the timber interest is called, it may be held separately and as completely as an interest in the soil itself.[1] However, because the use and value of the land is ordinarily affected by the creation of a separate interest in the timber the courts have found it necessary to take this into account in the interpretation of instruments creating such separate interests. It is for this reason that where timber is conveyed and no period of time for the removal of the timber is specified a reasonable time for removal will be implied.[2] This rule of construction is based upon the assumption that ordinarily the owner of the land would not intend to encumber his land beyond a reasonable time by the creation of the separate timber interest. But the owner may, if he

---

[1] Whether under the circumstances of the particular case the separate interest in the timber is real or personal property, an estate or profit a prendre, an estate of inheritance or estate for years, a legal or equitable interest, are troublesome questions which have received various answers. See Timber Deeds and Timber Contracts, O'Connell and Murphy: Continuing Legal Education Series, Oregon State Bar 1955 (Pamphlet p. 2).

[2] Emerson v. Hood River County, et al, 223 Or 112, 353 P2d 247 (1960); Arbogast v. Pilot Rock Lumber Co., 215 Or 579, 336 P2d 329, 72 ALR2d 712 (1959); Doherty v. Harris Pine Mills, 211 Or 378, 315 P2d 566 (1967).

desires, create in his transferee or reserve to himself a "perpetual" right of removal if his intention to do so is manifested. Thus the courts have recognized perpetual easements created as a part of the conveyance of the merchantable timber existing at the time of the sale.[9] If his intention is manifested, the landowner can create not only the "perpetual" right to remove timber existing at the time of the sale but also a "perpetual" interest (in the sense of the totality of his interest) in all of the timber that will ever be grown on his land with the concommitant right of removal.[4] Because the creation of an unlimited interest in all existing timber and all the timber to grow in the future severely curtails the use of the soil itself and greatly diminishes its value, the intention to create such an extensive timber interest must be very clearly manifested.[5]

■ The question before us is whether the language "growing, grown or to be grown" in the reservation clause of the deed meets this test of clarity of intention. We hold that it does. That part of the clause which reserves timber "to be grown" is used in contrast to timber "growing" or "grown" and clearly indicates an intent to distinguish between timber in existence at the time of the execution of the deed (i.e., trees which were "growing" or "grown") and timber which

---

[9] Baxter v. Mattox, 106 Ga 344, 32 SE 94 (1898); New River Lumber Co. v. Blue Ridge Lumber Co., 146 Tenn 181, 240 SW 763 (1922); Houston Oil Company of Texas v. Hamilton, 109 Tex 270, 206 SW 817 (1918).

[4] Crain v. Hoefling, 56 Cal App2d 396, 132 P2d 882 (1942); Baker v. Kenney, 145 Iowa 638, 124 NW 901 (1910). See generally, Falk, Timber and Forest Products Law § 89 (1958).

[5] Emerson v. Hood River County, supra; Parsons v. Boggie, 139 Or 469, 11 P2d 280 (1932); Coquille Mill and Tug Co. v. Robert Dollar Co., 132 Or 453, 285 P 244 (1930).

was not then in existence but which would germinate and come into existence after the execution of the deed (i.e., trees "to be grown"). We are unable to attribute any other reasonable meaning to the phrase "to be grown."

Plaintiff argues that the clause "created nothing more than a reservation of merchantable timber existing at the time of the execution of the deed with a right to remove the same within a reasonable time together with the growth during that reasonable time." If by "growth during that reasonable time" plaintiff means the additional growth on merchantable timber existing at the time of the deed, the phrase "to be grown" in the reservation clause would be redundant. If plaintiff's position is that the grantor reserved in addition to the merchantable timber existing at the time of the deed the existing timber not then merchantable but which by growth became merchantable within the reasonable removal period, we can only say that we can find no basis for such a speculative interpretation.

The clause reserving to the grantor timber "to be grown" in the future contains no time limitation on the operation of the reservation. If the clause reserved only *existing* timber we would, applying the rule laid down in our previous cases, imply a limitation that the removal of the timber was to be effected within a reasonable time. That rule is based upon the assumption that ordinarily the parties would intend that the owner of the timber would remove it within a reasonable time after acquiring it.

In the present case our inquiry is not whether the parties intended to put a time limitation on the *removal* of existing timber, but whether they intended to put a time limitation on the vesting of title to timber

not existing at the time of the contract but which might come into existence in the future. In these circumstances there is no basis for implying an intention to make the clause operable only with respect to timber which came into existence within a reasonable time. On the contrary, considering the common practice in Oregon of cutting timber on a sustained yield basis, it would be more reasonable to interpret a grant or reservation of timber "growing, grown or to be grown" as evidencing an intent to create a perpetual interest in the timber making it possible to cut the timber on a sustained yield basis.

The decree of the trial court is affirmed.