Argued and submitted June 6, reversed September 7, 1983, petition for rehearing
denied; former opinion modified; reversed and remanded to trial court for new trial
February 8, 1984 (296 Or 365, 677 P2d 671)

# NORTHWESTERN PACIFIC INDEMNITY COMPANY,
## *Petitioner on Review,*

*v.*

# JUNCTION CITY WATER CONTROL DISTRICT,
## *Respondent on Review.*

### (TC 16-79-09299, CA A22583, SC 29362)

668 P2d 1206

Daniel M. Holland, Jaqua, Wheatley, Gallagher & Holland, P.C., Eugene, argued the cause and filed briefs for petitioner on review.

Randall Bryson, Bryson & Bryson, Eugene, argued the cause for respondent on review. With him on the briefs was Calkins & Calkins, Eugene.

Kay Kiner James, Assistant Attorney General, argued the cause for amicus curiae State of Oregon. On the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, William F. Gary, Solicitor General, and Christine L. Dickey, Assistant Attorney General.

LENT, J.

## LENT, J.

The issue, as presented by the parties, is whether an indemnity clause was incorporated by reference into a form contract between the state and a municipal government entity where the text of the incorporating provision identified for incorporation the "appropriate" provisions contained in another document.

Defendant applied for and was granted a permit from the then Oregon State Highway Commission to construct an irrigation canal across state owned land adjacent to a highway. The application for the permit, which is a form authored and issued by the state,[1] contained on the back in the same size type as the rest of the form the following:

> "The *appropriate* General Provisions contained in 'Oregon State Highway Commission, General Provisions for Pole Line, Buried Cable, Pipe Line, Non-commercial Signs, and Miscellaneous Operations and/or Facility Permits, December, 1966' * * * *shall apply to this permit,* and by this reference are made a part hereof. *It shall be the obligation of the applicant to obtain* said General Provisions from the Commission *and to determine which of the various provisions are applicable* before the commencement of work under said permit." (Emphasis supplied)

The "General Provisions," in the form of a booklet, were available upon request from the Highway Commission. They contained the following:

> "A.   The Applicant shall indemnify and hold harmless the State, Commission, * * * against any and all damages, claims, demands, actions, causes of action, costs and expenses of whatsoever nature which may result from any injury to or the death of any persons or from the loss of, or damages to, property of any kind or nature, * * * when such injury, death, loss or damage arises out of the construction, installation, maintenance, repair, removal, relocation, operation or use of the pole line, buried cable, pipe line, sign or miscellaneous facility covered by the permit * * *."[2]

---

[1] ORS 180.060(5) as it existed between 1961 and 1966 authorized the Attorney General to prepare legal forms and contracts for the state upon request by the department concerned.

[2] This provision in a slightly altered form has been codified since 1981 under the regulations of the Highway Division of the Department of Transportation as OAR 734-55-025(1).

An employee of the firm hired by the Water District to engineer the canal obtained the permit application. He was also mainly responsible for supplying the technical information concerning the project that was required by the application. The application was then delivered to the Water District's general manager, who signed it on the Water District's behalf. The engineering firm employee who procured the permit application testified that although he knew of the "General Provisions" booklet, he was familiar with only those provisions dealing with technical engineering matters. The Water District's general manager testified that he did not know of the booklet at all.

The state accepted the application. The parties have treated the resulting permit as a contract.

Defendant completed construction of the canal, and a few months later a tree, located on state property close by the defendant's canal, fell across the highway, injuring two people and killing a third. Those injured, or their representatives, sought redress against a number of parties, including the state and this defendant.

Plaintiff was the state's insurer and tendered the state's defense to defendant. Defendant refused to defend the state's interests.

■ Plaintiff and defendant were independently successful in defending their respective interests; however, the plaintiff, subrogated to the rights of the state, sought indemnity from the defendant for its defense costs[3] pursuant to the indemnity provision here in dispute.

The defendant argued that the indemnity clause was not incorporated into its contract with the state and also that those who were responsible for procuring and executing the permit were not its agents. Defendant further contended that

---

[3] We note that it is well settled that an indemnitor defendant has "an obligation to defend the indemnitee or to pay the costs of defense if the claim was covered under the indemnity agreement * * *." *St. Paul Fire and Marine v. Crosetti Bros.,* 256 Or 576, 580, 475 P2d 69, 71 (1970); *St. Paul Fire v. U.S. Nat. Bank,* 251 Or 377, 446 P2d 103 (1968). The underlying issue here is similar to the main issue in *Crosetti Bros.,* that is whether the defendant has such an obligation. Unlike *Crosetti Bros.,* however, the obligation here depends not on the scope of the indemnity clause but on whether such a clause was part of the contract.

it was not responsible for any imputed knowledge of contractual terms gained by those who actually procured the permit.[4]

At trial, the issue of whether the indemnity clause was part of the agreement was given to the jury, which returned a verdict in favor of the defendant. The trial court denied the plaintiff's motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial. The plaintiff appealed, assigning as error, among others, the giving of the incorporation question to the jury.

The Court of Appeals affirmed, 61 Or App 341, 656 P2d 955 (1983), holding as follows on the issue of incorporation:

"* * * we cannot say that there was a clear incorporation by reference here. The permit does not incorporate the General Provisions in their entirety; if it had done so, there would be no question whether the indemnity provision was part of the agreement. Instead, it incorporates only the 'appropriate' provisions and leaves to the applicant to obtain the General Provisions 'and to determine which of the various provisions are applicable * * *.' There is no specific reference in the printed form to an indemnity provision.

"Assuming that there was a valid incorporation in the agreement of some of the General Provisions, the turbid language used by the state in the printed form is ambiguous and, to the extent that its meaning depends on extrinsic evidence, the question was for the trier of fact. *Meskimen v. Larry Angell Salvage Company*, 286 Or 87, 92-93, 592 P2d 1014 (1979). If extrinsic evidence is not necessary to resolve the ambiguity, the question is one of law for the court, in which case we would resolve the ambiguity against the party who prepared the agreement."

We allowed review in order to determine the incorporation issue because it appeared that there are some 14,000 similar permits which may be affected. We hold that plaintiff's

---

[4] Parenthetical to our main holding in this case, we point out that the outcome here is not affected by any issue of notice, constructive or actual. In the absence of extraordinary circumstances, such as fraud or contracts of adhesion in a consumer context, failure to read an instrument is not a defense to enforcement. *Shell Oil Co. v. Boyer*, 234 Or 270, 381 P2d 494 (1963); *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 487 P2d 80 (1971). Furthermore, defendant argued below and has attempted to raise here that those who were responsible for procuring and executing the permit application were not its agents. We point out that by acting upon the permit defendant ratified its contents. *Larkin v. Appleton*, 274 Or 671, 548 P2d 499 (1976).

motion for a directed verdict should have been allowed and, accordingly, we reverse.[5]

The Court of Appeals' analysis of the incorporation issue stops with an examination of the incorporating reference and thus fails to consider the issue in the context of an integrated contract. Having determined that the incorporation clause is ambiguous, the Court of Appeals then seems to conclude that it either fails to incorporate the booklet at all or that it does so with such imprecision that it is impossible to determine which specific provisions have been included in the contract.

■ It is a fundamental rule of contract interpretation that the agreement must be construed as a whole. *Sproul v. Gilbert,* 226 Or 392, 359 P2d 543 (1961). See also *Portland Web Pressman's Union v. Oregonian Pub. Co.,* 188 F Supp 859, affd 286 F2d 4, cert den 366 US 912, 81 S Ct 1086, 6 L Ed2d 237 (1960). The Court of Appeals should not have concluded that the criterion for incorporation was ambiguous until it examined the material to be incorporated in the light of that standard unless the incorporating reference was so unclear as to make it unreasonably difficult to ascertain what was to be considered under the standard.

■ In this case, however, the incorporating reference was not so unclear. Where a written instrument refers in specific terms to another writing, the other writing is a part of the contract. *Cerino v. Oregon Physicians' Service,* 202 Or 474, 276 P2d 397 (1954). Since this incorporating reference refers to a document in specific terms, those provisions are a part of the contract to the extent that they can be determined to be "appropriate."

■ We reject the suggestion in the defendant's brief and in the opinion below that the determination of which of the

---

[5] We point out that although we determine the issue raised by the parties, treating the permit as a contract may not be the most legally satisfactory or complete basis upon which to dispose of this case. The parties did not raise the possible significance of considering the permit as a license issued by the state and governed by what may or may not have been valid administrative regulations. In particular, the parties did not argue or brief the issue of whether the "General Provisions" were in force as valid administrative regulations or what effect the determination of that issue should have upon this case. *See Maddox v. Clac. Co. Sch. Dist. No. 25,* 293 Or 27, 643 P2d 1253 (1982). We say nothing here about how such an approach would affect the outcome and note that our holding governs only the narrow issue before us.

"General Provisions" is to be included in the contract is left to the applicant. To construe the criterion for incorporation in terms of the subjective interests of either party would be bound to make the application of such a term so unreasonable that no prudent person would enter into such a contract. *See Kabil Developments Corp. v. Mignot,* 279 Or 151, 157, 566 P2d 505 (1977). *See also Elte, Inc. v. S.S. Mullen, Inc.,* 469 F2d 1127 (1972). Instead, we affirm in this context our approval of the standard of limited usage, or the objective theory of interpretation. 4 Williston on Contracts §§ 605, 607 (3rd Ed), Restatement Contracts § 230. This is a standard to which we have had recourse in the past in similar situations. *Springer v. Powder Power Tool Corp.,* 220 Or 102, 348 P2d 1112 (1960); *Harty v. Bye,* 258 Or 398, 483 P2d 458 (1971). In *Rushlight Co. v. City of Portland,* 189 Or 194, 219 P2d 732 (1950), and in *Springer* this court approved the interpretation of this theory set out in Restatement (Second) Contracts § 230 as follows:

> "The standards of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean."

When applied in this context this statement of the theory results in the rule that when a contract term (such as "appropriate" in the instant case) serves as a standard of inclusion for other terms of an integration, and is susceptible without reference to these other terms to varying interpretations, parts of the contract which are affected shall not thereby automatically fail or be subject to dispute because of ambiguity in the criterion term. The standard shall be applied to the affected portions according to the most reasonable interpretation under the totality of the circumstances. It is only when the standard as applied to a disputed provision is subject to more than one equally reasonable interpretation that it is considered ambiguous and either gives rise to a jury question or is construed against its author. *May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971); *Young v. Crown Zellerbach Corp.,* 244 Or 251, 417 P2d 394 (1966).

■ When we examine the indemnity clause under the appropriateness criterion as thus construed, it is readily apparent that the indemnity clause is part of the contract. The indemnity clause refers to the one subject to its content as "the Applicant." There can be no question at all in this case to whom this term refers. Moreover, the clause describes the duty to indemnify as covering the cost of claims against the state arising out of construction in any of its aspects authorized by the permit. The defendant cannot argue that it was not authorized by the permit to engage in activities that the provision meant to govern or that it did not engage in such activities;[6] therefore, the indemnity clause is "appropriate" to this permit.

Reversed.

---

[6] Defendant has attempted indirectly to raise here an issue with regard to whether the costs sought by the plaintiff actually arose out of construction activities covered by the permit. The plaintiff may not raise such an issue here as an argument against incorporating the indemnity clause into the contract. As such, it is immaterial, and defendant has lost the opportunity to have the issue considered directly as a defense against enforcement because the issue involves questions of fact which should have been raised at trial on pleadings and evidence. *Waller v. Rocky Mtn. Fire & Casualty,* 272 Or 69, 535 P2d 530 (1970).