Argued and submitted July 10, 2000, reversed and remanded July 5, 2001

## PIONEER RESOURCES, LLC,
*Appellant,*

*v.*

## Paul E. LEMARGIE,
Carl Lee Sells, Perry Wayne Ulmen, Thad Sells,
Tane V. Sells, Twila M. Speer,
Michael C. Smith and Lucille M. Smith,
*Respondents,*

*and*

## Raymond M. PORTER
and Nila Porter,
*Defendants.*

97-0938262; A106375

27 P3d 520

H. Andrew Clark argued the cause for appellant. With him on the briefs were William H. Martin and Gleaves Swearingen Larsen Potter Scott & Smith LLP.

Timothy J. O'Hanlon argued the cause for respondents. With him on the brief was Mautz Baum & O'Hanlon, LLP.

Linder, Presiding Judge, and Kistler and Brewer, Judges.

LINDER, P. J.

Kistler, J., concurring.

## LINDER, P. J.

This action arises out of a dispute over ownership of timber rights on a parcel of real property. Plaintiff, Pioneer Resources, LLC, seeks, among other relief, a declaration that it has the right to harvest merchantable timber on defendants' real property based on a 1971 deed.[1] The dispositive issue on appeal is the interpretation of that deed. Because we conclude that the trial court erred in its interpretation of the deed and in granting partial summary judgment for defendants based on that interpretation, we reverse and remand.

By way of general background, the dispute between the parties arises as a result of contractual transactions entered into by the parties' predecessors in interest, Harris Pine Mills and the Gibsons. Through a series of deeds and transactions, Harris Pine Mills purchased or retained timber rights on various parcels of land owned by the Gibsons. In 1968, the Gibsons and Harris Pine Mills decided to consolidate those various deeds and conveyances in order to extend the time in which Harris Pine Mills could harvest the timber on some of the land. As consideration for the consolidated agreement, Harris Pine Mills paid the Gibsons $3,000 and gave them an option to purchase additional specified real property then owned by Harris Pine Mills. In 1971, the Gibsons exercised their option to purchase. The parties executed a deed that conveyed the property to the Gibsons but that excepted "any and all merchantable timber now standing, including future growth, according to the terms and conditions" of the 1968 consolidation agreement.

In August 1997, plaintiff attempted to harvest the timber on the property conveyed to defendants under the 1971 deed. Defendants prevented plaintiff from doing so. Plaintiff therefore filed this action. Defendants moved for summary judgment, arguing that there were no issues of material fact and that they were entitled to judgment as a matter of law because plaintiff's rights in the timber expired

---

[1] Plaintiff's complaint sought declaratory relief, injunctive relief, specific performance, and damages for breach of contract. Defendants are private individuals who own various portions of the real property subject to this dispute. We refer to them collectively as defendants.

when plaintiff failed to cut it within a reasonable time after the 1971 conveyance. The trial court agreed but only in part. The trial court concluded that the timber-harvest date specified in the 1968 agreement was not incorporated into the 1971 deed. Consequently, under the trial court's interpretation of the deed, plaintiff was obligated to exercise the reserved timber rights within a reasonable time.[2] Contrary to defendants' position, however, the trial court also concluded that there were material issues of fact as to what constituted a reasonable time to harvest the timber in this case. After trial on that issue, the trial court ruled for defendants and entered a judgment dismissing plaintiff's complaint with prejudice.

Plaintiff appeals, assigning error to the trial court's grant of partial summary judgment.[3] Plaintiff argues that the 1971 deed unambiguously incorporated all of the terms of the 1968 agreement pertaining to the parties' respective timber rights, including the right to harvest the timber until the date specified in the 1968 agreement. Alternatively, plaintiff argues that, at best for defendants, the agreement is ambiguous and the trial court should have permitted the parties to present evidence as to the 1971 deed's meaning. As we explain below, we agree with plaintiff that the deed unambiguously incorporated the timber-harvest date specified in the 1968 agreement. We therefore reverse the trial court's entry of partial summary judgment in favor of defendants.

Our goal in interpreting a contract, including a deed conveying property, is to determine the parties' intent. *See Tipperman v. Tsiatsos,* 327 Or 539, 544-45, 964 P2d 1015 (1998) (construing an instrument that created an interest in land); *Yogman v. Parrott,* 325 Or 358, 361, 937 P2d 1019 (1997) (construing a contract). We do that by looking first to

---

[2] *See generally Franke v. Welch,* 254 Or 149, 151, 458 P2d 441 (1969) (if an instrument conveying timber rights is silent as to the time for removal of the timber, a reasonable time will be implied); *see also Emerson v. Hood River County,* 223 Or 112, 121-23, 353 P2d 247, *on reh'g* 223 Or 112, 354 P2d 74 (1960) (summarizing Oregon decisions that have measured a reasonable time).

[3] Plaintiff also raises several assignments of error relating to the trial court's consideration of the evidence at trial about the parties' intentions and its eventual determination that plaintiff forfeited its right to harvest the timber by not exercising that right within a reasonable time. Because of our resolution of the meaning of the 1971 deed, we do not reach those additional issues.

the language of the written instrument itself and considering its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law. *Yogman,* 325 Or at 361. If a provision is ambiguous—that is, if it has no definite meaning or is capable of more than one reasonable interpretation—we will examine relevant surrounding circumstances or extrinsic evidence of the contracting parties' intent. *Tipperman,* 327 Or at 544-45; *Yogman,* 325 Or at 363-64. Finally, if an ambiguity remains, we may resolve the contract's meaning by resort to applicable maxims of construction. *Yogman,* 325 Or at 364-65.

■       Thus, our starting point here is the text and context of the 1971 deed. The deed describes, by metes and bounds, the real property to be conveyed from Harris Pine Mills to the Gibsons. The description continues by stating:

> "Excepting therefrom any and all merchantable timber now standing, including future growth, according to the terms and conditions of that certain agreement dated November 27, 1968 and recorded on Page 333, Book 159, Deed Records of Union County."

That exception thus removes from the description all standing and future merchantable timber, which is a property right that would otherwise pass by the deed. *See State ex rel Dept. of Trans. v. Tolke,* 36 Or App 751, 759, 586 P2d 791 (1978), *rev den* 286 Or 149 (1979) (exception in a property conveyance ordinarily serves "to take something out of the thing granted that would otherwise pass by the deed"). The exception also qualifies the retained timber rights, making the rights subject to certain terms and conditions. Significantly, however, the parties did not specify the terms and conditions in the 1971 deed itself. Rather, they incorporated the terms and conditions of the 1968 agreement by reference. Because they did so, we treat the 1968 agreement as though it were a part of the 1971 deed. *See NW Pac. Indem. v. Junction City Water Dist.,* 295 Or 553, 558, 668 P2d 1206 (1983), *mod on other grounds* 296 Or 365, 677 P2d 671 (1984).

       We therefore turn to the text of the incorporated 1968 agreement. As we earlier described and as the 1968 document expressly declares, the Gibsons and Harris Pine Mills

entered into the 1968 agreement because they desired to accomplish four related objectives: (1) "to consolidate their agreements pertaining to" the real property owned by the Gibsons; (2) to "extend the period for cutting and removing the timber" owned by Harris Pine Mills; (3) to "grant [the Gibsons] an option to purchase certain real property" as specified in the 1968 agreement; and (4) to modify in other respects the prior conveyances between the parties. By way of a recital clause, the agreement identifies several prior contracts and deeds that conveyed ownership of property and timber to Harris Pine Mills. Following that recital, in the agreement's first operative clause, the parties agree to extend the time to cut and remove some of the merchantable timber conveyed to Harris Pine Mills. Specifically, the extension clause provides:

> "1.   Extension. The term for the cutting and removal of merchantable timber conveyed and/or sold to [Harris Pine Mills] by the foregoing instruments is hereby extended until to and including the 10th day of October, 1997. The merchantable timber heretofore conveyed and sold to [Harris Pine Mills] and affected by this extension is situated on the following described real property[.]"

(Underscoring in original.) The extension clause then sets forth a metes-and-bounds description of various parcels of land in Umatilla and Union Counties. That clause is followed by another entitled "Excluded Land and Timber" stating that any land and timber described by the instruments in the recitals that is not within the metes-and-bounds description in the extension clause is "unaffected" by the 1968 agreement. The remainder of the 1968 agreement sets forth a series of detailed and comprehensive terms and conditions pertinent to the harvesting of timber on the affected land.[4]

---

[1] Those terms and conditions include, among others, provisions that define "merchantable timber" to encompass a broad range of standing timber, growing timber, and wood products; give Harris Pine Mills unlimited annual access to the land for timber removal and the right to use existing roads and all rights of previously granted easements for ingress and egress; require the Gibsons to legally dispose of all slash from timber harvesting; and reserve to the Gibsons the right to cut and remove poles and other wood for fences and other personal uses.

In combination, the extension clause and excluded property clause have a single and plain meaning. They provide that the October 10, 1997, harvest date applies to all parcels of property within the metes-and-bounds description and that any previously deeded land and timber rights on parcels of property falling outside of that description are not affected by the modified terms. Necessarily, then, as to the unaffected parcels, the terms and conditions for harvesting timber on those properties remain governed by the pre-1968 conveyances.

The next inquiry is the effect of the 1968 agreement on the 1971 deed. The 1968 agreement refers to the property that the 1971 deed conveyed to the Gibsons in only one place: an option-to-purchase paragraph. Specifically, in paragraph 9, the parties declared that, as part of the consideration for the agreement, the Gibsons were given a three-year option to purchase the property from Harris Pine Mills "subject to any timber rights in [Harris Pine Mills]." At that time, the property that was the subject of the 1971 deed was not among the properties that were expressly made subject to the 1968 timber harvest terms and conditions, including the extended "cut date." Nor was that property deeded in 1971 among the parcels of property expressly excluded from those terms and conditions. Rather, it was outside the scope of the 1968 agreement altogether, except insofar as the option to purchase made it the subject of potential future dealings between the parties.

The question thus narrows to whether the October 10, 1997, timber harvest date applies to the timber on the property conveyed in 1971 because the 1971 deed declares that the timber rights were reserved "according to the terms and conditions" of the 1968 agreement. We conclude that it does. Quite simply, we see no other plausible way to construe the 1971 deed and the incorporated 1968 agreement. The 1971 deed states expressly that the timber rights are reserved according to the terms and conditions of the 1968 agreement. One of the many terms and conditions specified in the 1968 agreement is the extended harvest date of October 10, 1997. We agree with plaintiff that the incorporating language would be a nullity were we to reach any other conclusion, which would run afoul of the rule that we should give

effect to every clause of a contract if possible. *See* ORS 42.230; *Becker v. North's Restaurants, Inc.*, 157 Or App 136, 145, 967 P2d 1246 (1998), *rev den* 328 Or 331 (1999). The reference to the 1968 agreement must be deemed to actually add something to the terms of the 1971 deed if at all possible. Here, for the incorporating language to have any meaning, the various terms and conditions set forth in the 1968 agreement for the harvesting of timber on the affected property must apply as well to the property conveyed in the 1971 deed.

The trial court likewise determined that the language of the 1971 deed was unambiguous. It concluded, however, that the deed unambiguously incorporated only the option-to-purchase paragraph of the 1968 agreement. The trial court, relying on defendants' arguments to the same effect, reasoned that only the option-to-purchase paragraph referred to the specific property conveyed under the 1971 deed and that the portions of the 1968 agreement identifying the property subject to the modified timber harvest terms did not encompass the property in question in this case. In effect, the trial court believed that the terms and conditions of the 1968 agreement could not apply to the property conveyed in 1971 unless they applied by force of the 1968 agreement itself.

The first problem with that approach is that it disregards the effect of incorporating the 1968 agreement into the 1971 deed. The reason for an incorporation by reference is to cause the provisions of one contract or document to apply to another contract or document to which they otherwise would not apply. *See generally NW Pac. Indem.*, 295 Or at 558. That purpose would be frustrated routinely if the earlier incorporated document had to apply to a later transaction by its own terms.

A second problem with the trial court's reasoning is that it seems to confuse the *conveyance of the property* under the 1971 deed with the *reservation of the timber rights*. If the 1971 deed had provided for the property to be conveyed subject to the terms and conditions of the 1968 agreement, the trial court's reasoning might have had greater force. In that event, we might agree that only the option-to-purchase paragraph applies or, at a minimum, that the scope of what is

incorporated is ambiguous. But that is not the language of the 1971 deed. Rather than qualify the conveyance of the property by reference to the terms and conditions of the 1968 agreement, the 1971 deed so qualifies the reserved timber rights. The distinction is important. The 1968 option-to-purchase paragraph contains no terms and conditions for the harvesting of timber. If, as the trial court concluded, only that paragraph of the 1968 agreement were to have been incorporated into the 1971 deed, there would be no terms and conditions to apply to the 1971 reservation of timber rights. The net effect of that conclusion would be that the incorporation of the 1968 agreement into the 1971 deed would have had no operative effect.

Thus, as we earlier concluded, the only way to give effect to the incorporation language in the 1971 deed is to interpret it to incorporate the various terms and conditions for harvesting timber contained in the 1968 agreement. Included among those terms and conditions is the provision specifying October 10, 1997, as the date by which the timber must be harvested. The trial court erred in concluding otherwise and, consequently, erred in granting partial summary judgment for defendants. Plaintiff, however, did not file a cross-motion for summary judgment. The proper disposition on appeal therefore is to remand for the trial court to determine what further action to take in light of our construction of the 1971 deed.

Reversed and remanded.

**KISTLER, J.,** concurring.

The majority holds that the 1971 deed unambiguously gives plaintiff until 1997 to exercise its reserved timber rights. The majority accordingly reverses the trial court's judgment in defendant's favor; it remands for further proceedings only because plaintiff did not file a cross-motion for summary judgment. I agree with the majority that this case should be reversed and remanded but for a different reason. In my view, the 1971 deed is ambiguous, and the parties should be permitted to introduce evidence on its meaning. *See Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 347-48, 876 P2d 761 (1994).

Before 1968, the Gibsons conveyed various interests in land and timber to Harris Pine Mills. In 1968, Harris Pine Mills and the Gibsons entered into an agreement in which, among other things, they agreed that Harris Pine Mills had until 1997 to cut merchantable timber on some but not all the real property that the Gibsons had conveyed to Harris Pine Mills. The agreement also defined the term "merchantable timber," gave the Gibsons certain reserved rights, and provided that the Gibsons would indemnify Harris Pine Mills if the land and timber rights that the Gibsons had conveyed to Harris were encumbered by liens. In paragraph 9 of the agreement, Harris Pine Mills gave the Gibsons an option to purchase a separate parcel of land that Harris Pine Mills owned "subject to any timber rights in [Harris Pine Mills, its] successors and assigns."

In 1971, Harris Pine Mills deeded the separate parcel of land described in paragraph 9 of the 1968 agreement to the Gibsons, "[e]xcepting therefrom any and all merchantable timber now standing, including future growth, according to the terms and conditions of [the 1968 agreement between Harris Pine Mills and the Gibsons]." The dispute in this case centers on what the phrase "according to the terms and conditions [of the 1968 agreement]" means. Plaintiff argues that that phrase incorporates all the terms and conditions of the 1968 agreement into the 1971 deed, including the provision in paragraph 1 extending the time in which Harris Pine Mills may harvest timber until 1997. The majority agrees and finds the parties' intent on this point unambiguous.

In my view, the majority's conclusion is problematic. The 1971 deed was intended to incorporate some but not necessarily all of the 1968 agreement. Several of the terms and conditions that are contained in the 1968 agreement are simply irrelevant to the 1971 deed. In paragraph 5 of the 1968 agreement, the Gibsons agreed to hold Harris Pine Mills harmless if the timber rights that the Gibsons had conveyed to Harris Pine Mills were encumbered in any way. Because Harris Pine Mills is the grantor in the 1971 deed and reserved timber rights rather than granted them, that term of the 1968 agreement has no apparent application to the 1971 deed. The same is true for paragraph 7 of the 1968

agreement. Paragraph 7 confirms that the Gibsons had granted some timber rights on one of the properties to the Pilot Rock Lumber Company. Whatever timber rights the Gibsons had granted to the Pilot Rock Lumber Company has no bearing on the timber rights that Harris Pine Mills reserved on the separate parcel of land it conveyed to the Gibsons.

Paragraph 1 of the 1968 agreement, the paragraph on which plaintiff relies, falls somewhere between the paragraphs that clearly do not apply and those that clearly do. That paragraph provides that "[t]he term for cutting and removal of merchantable timber conveyed and/or sold to [Harris Pine Mills] by the foregoing instruments is hereby extended until to [*sic*] and including the 10th day of October, 1997." The agreement provides that the merchantable timber "heretofore conveyed and sold to [Harris Pine Mills] and affected by this extension is situated on the following described real property." The 1968 agreement then describes specific parcels of land that paragraph 1 affects.

By its terms, paragraph 1 of the 1968 agreement applies only to the described property set out in that paragraph. It does not apply to the land that Harris Pine Mills gave the Gibsons an option to purchase. It may be that, when Harris Pine Mills deeded property to the Gibsons in 1971 and reserved the timber rights for itself, it intended that the time set out in paragraph 1 of the 1968 agreement would apply to the timber rights it reserved in 1971 as well as to the other parcels of land specified in paragraph 1. It is equally plausible that, in light of the express limitations set out in paragraph 1, the parties understood that that paragraph was as inapplicable to the 1971 deed as paragraphs 5 and 7 are. Because either conclusion is plausible, the trial court should not have granted summary judgment in defendant's favor and held that the parties clearly did not intend to incorporate paragraph 1. Conversely, in my view, we should not conclude that the parties unambiguously intended to incorporate that paragraph. *Compare NW Pac. Indem. v. Junction City Water Dist.*, 295 Or 553, 668 P2d 1206 (1983), *modified on other grounds* 296 Or 365, 677 P2d 671 (1984) (resolving issue as a question of law when the parties' intent was clear). Although I agree with the majority that we should reverse and remand,

I would allow the parties to introduce evidence on remand to resolve the ambiguity. The majority's opinion forecloses that possibility.