Argued and submitted August 2, affirmed November 15, 1983

# GRANT COUNTY,
*Respondent on Review,*

*v.*

# GUYER et al,
*Petitioners on Review.*

## (CA A25909; SC 29562)

672 P2d 702

——————————————

Daniel L. Cronin, John Day, argued the cause and submitted the briefs for petitioners on review.

No appearance contra.

Daryl Garretson, Yamhill County Counsel, McMinnville, Oregon, argued the cause and filed a brief amicus curiae on behalf of the Association of Oregon Counties.

Charles F. Hinkle, Portland, filed a brief amicus curiae on behalf of the American Civil Liberties Foundation of Oregon, Inc.

Before, Lent, Chief Justice,** and Linde, Peterson,*** Roberts, Carson and Jones, Justices.

ROBERTS, J.

——————————————

** Chief Justice when this case was argued.

*** Chief Justice when this decision was rendered.

## ROBERTS, J.

This appeal presents the question whether notice of foreclosure by publication as provided by ORS 312.040(1) violates the due process provision of the Fourteenth Amendment to the Constitution of the United States and whether it violates the equal protection clause of the Fourteenth Amendment or Article I, section 20 of the Oregon Constitution.

Defendants are named in this tax foreclosure proceeding for failure to pay property taxes. The record shows defendants were mailed the normal annual notices of taxes due. ORS 311.250. The tax assessor also sent letters to the defendants at their respective last known addresses, containing the following information:

"Under ORS 311.610 and 312.010, unless payment is made by February 15, 1982, foreclosure proceedings may be started. The tax in the amount of * * * plus interest in the amount of * * * makes a total of * * * [amounts as applicable to each defendant] which will have to be paid in order to stop foreclosure proceedings."

Thereafter, pursuant to ORS 312.040(1), the tax collector published in the newspaper notices of foreclosure to each defendant. When the proceeding came before the court, the county's attorney requested the appointment of an attorney to represent the absent defendants under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 App USCA § 520 (1981).[1] The appointed attorney filed a motion to dismiss, claiming that the publication procedure did not comport with the constitutional provisions referred to above and that, therefore, the court was without jurisdiction. That motion was

---

[1] 50 USC App § 520(1) provides in relevant part:

"In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. If unable to file such affidavit plaintiff shall in lieu thereof file an affidavit setting forth either that the defendant is in the military service or that plaintiff is not able to determine whether or not defendant is in such service. If an affidavit is not filed showing that the defendant is not in the military service, no judgment shall be entered without first securing an order of court directing such entry, and no such order shall be made if the defendant is in such service until after the court shall have appointed an attorney to represent defendant and protect his interest, and the court shall on application make such appointment. * * *"

denied and a default judgment was entered against the defendants. The Court of Appeals affirmed per curiam, citing *Umatilla County v. Porter,* 12 Or App 393, 507 P2d 406 (1972).

While the constitutionality of only ORS 312.040(1) is at issue, it is necessary to consider the entire taxing procedure in order to determine what part the publication notice required by ORS 312.040(1) plays in the total statutory scheme.

All real property is subject to taxation unless otherwise exempt, ORS 307.030. The statutes provide a method of filing for the exemption, ORS 307.162, and for appeal from the denial of an exemption, ORS 305.275(1)(c) and ORS 305.280(1). If property is not exempt it is subject to assessment, ORS 308.210. The statutes provide for notice by mail of any increases in the assessment, ORS 308.280 and ORS 308.287, and for an appeal procedure, ORS 309.026, ORS 309.035, 309.100 and 305.275(1)(b). Notification of the tax levy must be made to the taxpayer by mail each year before November 1, ORS 311.250. This notice includes an identification of any taxes that are delinquent and the year or years of the delinquency; it is sent to the address supplied by the owner under ORS 311.555 which requires the taxpayer to keep the tax assessor informed of his or her true and correct address. Failure to do so precludes the taxpayer from raising lack of notice in any legal proceeding. An appeal procedure is also provided at this point, ORS 305.275(1)(d).

Before property can be foreclosed taxes must be delinquent for three years, ORS 312.010(1). However, notice of a delinquency must be sent to the taxpayer *each* year in accordance with ORS 311.545 which provides:

"(1) As soon as practicable after taxes become delinquent each year, the tax collector shall send to each person, firm or corporation shown on the tax roll as owning real property on which the taxes due and charged have not been paid, a written notice, stating:

"(a) A brief description of each parcel of real property.

"(b) The total amount of taxes due and delinquent on the real property.

"(c) The rate of interest and penalties applicable thereto.

"(d) The date on or after which foreclosure proceedings may be commenced as provided by law.

"(2) The tax collector shall send the notice, in each instance, by letter mail to the last-known address of the person, firm or corporation shown on the tax roll, or otherwise reported to the tax collector, as owing the delinquent taxes.

"(3) This section does not apply where the amount of the taxes delinquent against any particular parcel of real property is less than $1."

An appeal is provided here also, ORS 305.275(1)(d). Thus, when the foreclosure proceeding is commenced, the taxpayer has been sent three notices of delinquency by mail. After the tax collector makes a list of real properties subject to foreclosure, ORS 312.030, the foreclosure proceeding is commenced in accordance with ORS 312.040(1) which provides:

"(1) Notice of each foreclosure proceeding, except as otherwise provided in subsection (2) of this section, shall be given exclusively by four weekly publications of the foreclosure list in a newspaper of general circulation in the county, to be designated by the county court or board of county commissioners. The price charged by the newspaper shall be at the legal rate as provided by law. The publication of the notice shall be sufficient service on each person interested in any of the properties, and it shall not be necessary to mail a copy of the notice to the owner or to any other person interested in any property, except that a copy of the newspaper notice shall be mailed by the county to each incorporated city in the county. All persons owning or claiming to own, or having or claiming to have, any interest in any property included in the foreclosure list are required to take notice of such proceeding and of all steps thereunder."

Property may be removed from the foreclosure list by paying all taxes which are three years delinquent during the time the publication is occurring, ORS 312.110. If not so removed, a judgment and decree is entered pursuant to ORS 312.090 and the property is ordered sold to the county, ORS 312.100. The decree has the effect of beginning a one year period of redemption during which time any person claiming an interest in the property may redeem by paying all the delinquent taxes, ORS 312.120. Thirty days prior to the expiration of the redemption period the tax collector is required to publish notice of the expiration of the period, and is required also to notify the owner by certified mail of the pending expiration of

the redemption period and the effect of the owner's failure to redeem. ORS 312.190.

We first consider whether, in this statutory scheme, notice by publication, rather than by mail, of the foreclosure is violative of defendants' due process rights. Defendants maintain that at this crucial stage in the tax proceedings due process requires no less than notice by mail, while plaintiff argues that notice by publication is sufficient in these circumstances.

Defendants primarily rely on *Mullane v. Central Hanover Tr. Co.,* 339 US 306, 70 S Ct 652, 94 LEd 865 (1950) and *Schroeder v. New York,* 371 US 208, 83 S Ct 279, 9 LEd 2d 255 (1962). There is no question that *Mullane* is the landmark case in this area. It involved a proceeding for the judicial settlement of the accounts of a common trust fund. The only notice given to the beneficiaries was by publication in a local newspaper. The court held that where the names and addresses were known to the trustees, notice by publication was not adequate to meet due process requirements. The court said:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information, * * * and it must afford a reasonable time for those interested to make their appearance, * * *. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. * * *

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. * * *." (Citations omitted throughout.) 339 US at 314-15.

In *Schroeder* plaintiff sought to enjoin the city of New York from diverting a stream, alleging that the notice provisions of the law under which the city had acted violated the due process provisions of the federal constitution. Notice of the diversion had been given by publication in various newspapers, and signs had been posted on poles and trees in the

vicinity of the diversion project. Plaintiff's name and address were readily ascertainable from deed records and tax rolls. The court relied on its *Mullane* decision repeating some of the language quoted above and saying:

"The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. * * *" 371 US at 212-13.

After the case at bar was decided by the Court of Appeals and before it was argued in this court, the Supreme Court of the United States decided *Mennonite Board of Missions v. Adams,* 462 US 791, 103 S Ct 2706, 77 LEd 2d 180 (1983). Defendants contend that this latest word on the subject supports their contention. *Mennonite* is concerned with an Indiana statute requiring the sale of real property for nonpayment of property taxes after publication of notice once a week for three consecutive weeks. Notice by certified mail was required to be given to the property owner, but there was no provision for notice by mail or personal service to mortgagees of the property. Provisions for sale of the property and for redemption are similar to Oregon's set out *supra.* The mortgagee of the property in question did not learn of its sale until the redemption period had run. When the purchaser filed suit to quiet title the mortgagee claimed he had not received constitutionally adequate notice. The Supreme Court, again invoking *Mullane,* held that constructive notice to a mortgagee who is identified in the public record does not satisfy due process requirements.

In *Mennonite,* as in *Mullane,* the only notice was by publication. The mortgagee did not receive the sequence of notices by mail provided to taxpayers in the instant case. *Mennonite* indicates that publication alone is constitutionally inadequate. It says nothing about publication supplemented by notices by mail.

We have previously addressed the constitutional question at issue here. In *Cascade Tree Farms v. Clackamas Co.,* 250 Or 401, 442 P2d 606 (1968) we plainly said that notice of tax foreclosure by publication in four successive publications of a weekly newspaper of general circulation within a

county was sufficient to provide a property owner with adequate notice and to meet the requirements of due process. Prior to that, in *Knapp v. Josephine County,* 192 Or 327, 353, 235 P2d 564 (1951) we said:

> "Taxes, as has been many times stated, are a very practical matter. They are the lifeblood of the state, and the property owner's most intimate liaison—although often a waspish one—with the state. In construing tax statutes, it must be borne in mind that the law of taxation places upon property owners the duty to keep themselves informed about the recurrent liability of their property for taxes, and charges them with knowledge that neglect to pay a tax will result in foreclosure proceedings. * * *"

*See also Otto & Harkson Co. v. Josephine Co.,* 207 Or 199, 295 P2d 875 (1956). We did not address *Mullane* in any of these cases.

■ Turning now, however, to *Mullane* and how it should be applied in this case, we conclude the reasonableness principle enunciated there does not prohibit the use of notice by publication in some circumstances; neither does it require the use of notice by mail in all circumstances. *See* Note, *Due Process: The Constitutional Requirements of Notice in Tax Sale Proceedings,* 30 Ark L Rev 73 (1976/77); Note, *The Constitutionality of Notice by Publication in Tax Sale Proceedings,* 84 Yale L J 1505 (1975). *Mullane* requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action * * *" with "due regard for the practicalities and peculiarities of the case * * *."

*Botens v. Aronauer,* 32 NY2d 243, 249, 298 NE2d 73, 75, 344 NYS2d 892, *appeal dismissed* 414 US 1059, 94 S Ct 562, 38 LEd 2d 464 (1973) observes: "[In *Mullane, Schroeder* and other cited cases] indirect notice by either publication or posting was held invalid for the reason that the individuals had no reason to expect that their property interests were being affected." *Christie-Stewart, Inc. v. Paschall,* 502 P2d 1265 (Okla 1972), *vacated and remanded* 414 US 100, 94 S Ct 313, 38 LEd 2d 298 (1973), *aff'd on reconsideration,* 544 P2d 505 (Okla 1974), *cert denied,* 426 US 935, 96 S Ct 2648, 49 LEd 2d 386 (1976) elaborates:

> "[In *Mullane* and other cited cases] publication was insufficient notice because it would require a property owner to

constantly examine the legal notices contained in newspapers to determine whether his property was in jeopardy. In each of the cited cases the landowner was not aware that he should examine the published notices. He could not forecast with certainty when, if ever, an action would be filed." 502 P2d at 1267.

However, where other notice informs the landowner that failure to pay taxes will affect his interest in the land

"the publication notice * * * is supplemental to other action which had conveyed a warning to the owners of interests in the land. The Supreme Court in *Mullane* said this has been the traditional and acceptable use of publication." 502 P2d at 1268.

Unlike the situation in *Mullane* and *Schroeder,* notice by mail of the consequences of delinquent taxes was provided in addition to publication notice of the actual sale. Publication notice was supplemental to other statutorily mandated mailed notices.

Other states have upheld tax sale notification schemes which rely entirely on publication notice, on the theory that taxpayers are presumed to know that a foreclosure action is possible if they fail to pay taxes. *Guaranty Mortg. Corp. v. Town of Burlington,* 385 Mass 411, 432 NE2d 480 (1982) and *Botens v. Aronauer, supra.* Here we need not rely on such assumptions. The notices of delinquency informed defendants that they would have to pay their taxes by a fixed date "in order to stop foreclosure proceedings."

The state has an important need to collect taxes that are due it. To accomplish this objective the laws of this state contain an elaborate statutory scheme designed to ensure efficiency and fairness in carrying out that objective. They provide numerous notices by mail to the taxpayer of the assessment of taxes, delinquencies, notice of possible foreclosure and notice of pending redemption expiration and procedures to accomplish a redemption. We hold that publication is acceptable as notification if it is "supplemental to other action which in itself may reasonably be expected to convey a warning." *Mullane, supra,* 339 US at 316. Because it is supplemental to other statutorily mandated notices given by mail, the published notice provided for in ORS 312.040(1) is constitutionally sufficient.

■ Defendants also claim the notice by publication denies them equal protection of the law under Article I, section 20 of the Oregon Constitution and under the Fourteenth Amendment of the United States Constitution because lienholders who request notice under ORS 312.140,[2] and owners of property subject to unpaid liens and assessments, are entitled to notice of foreclosure proceedings by mail. ORS 312.400[3] and ORS 223.523.[4] Defendants argue that there is no

---

[2] ORS 312.140 provides:

"(1) A mortgagee or other holder of a recorded lien on real property may file with the tax collector a request that notice of any foreclosure list including such real property be given to such mortgagee or other lienholder. The request shall contain the name and address of the person filing it, the description of the property and the name of the owner or reputed owner thereof, and the date of expiration of the mortgage or lien. Notice need not be given after expiration of the mortgage or lien, unless a further request therefor is filed. If the mortgagee or lienholder furnishes a duplicate form of request for the notice, the tax collector shall certify thereon to the filing and return the duplicate to the person making the request. All requests for notices of certificates of delinquency filed pursuant to previously existing laws have the force and effect of requests filed under this section.

"(2) Whenever any property described in the request for notice is included in a foreclosure list or in a certificate of delinquency issued to any irrigation or drainage district the tax collector shall send by registered mail written notice thereof to the mortgagee or other lienholder. At the time of mailing the notice the tax collector shall note that fact in ink in the latest tax roll opposite the description of the property. The notation in the tax roll is prima facie evidence that the notice was mailed. Where the same mortgagee or lienholder has filed requests for notices on two or more properties included in a foreclosure list, one general notice may be issued covering all such properties."

[3] ORS 312.400 provides:

"(1) Whenever the city treasurer posts or publishes notice of sale of any property described in the request made under ORS 312.390 for any delinquent city assessment or lien thereon, he shall give notice of the proposed sale to the mortgagee or other lienholder who filed the request by registered mail addressed to the mortgagee or other lienholder at the address given in the request.

"(2) At the time the notice is mailed, the city treasurer shall note the fact of the mailing in ink on the record of such assessment or lien in his possession and shall make a certificate of the mailing and keep it on file in his office. The certificate so filed is conclusive evidence that the notice was mailed.

"(3) The notice shall be mailed not less than 21 days prior to the date fixed for the sale and shall be addressed to the mortgagee or other lienholder specified in the request.

"(4) The notice shall contain:

"(a) The name of the owner or reputed owner of the property.

"(b) The description of the property.

"(c) The date fixed for the sale.

rational basis for the different notice requirements among these groups. We disagree.

The different notice requirements at the time of foreclosure can be explained by the difference in the overall statutory scheme of notification provided throughout the tax assessment process. Notice by mail to lienholders affords them an opportunity to protect their interests in property at the time of foreclosure, an opportunity which landowners are afforded on a recurring basis with notice by mail of annual assessments. Notice by mail of special assessments informs taxpayers of delinquent amounts which, unlike annual property taxes, do not accrue on a regular basis. We find no violation of defendants' Article I, section 20 or Fourteenth Amendment rights.

The Court of Appeals is affirmed.

---

"(d) A description of the city assessment or lien and the amount unpaid thereon.

"(e) The amount necessary to be paid to prevent the sale of the property."

[4] ORS 223.523 provides:

"(1) Before a sale of real property under ORS 223.505 to 223.590 takes place, the treasurer shall have notice of the sale printed once a week for four successive weeks in a daily or weekly newspaper, as defined in ORS 193.010, generally circulated in the county in which the sale will be held. The notice of sale must contain a particular description of the real property to be sold, the name of the owner of the real property, the amount unpaid on the lien or assessment and the time and place of the sale.

"(2) The treasurer shall send a copy of the first of the four published notices by registered or certified mail to both the owner of the real property to be sold at his last-known post-office address or place of residence and to the occupant, if any, of the real property to be sold. The treasurer shall retain and file the return receipt for the registered or certified mail."