Argued and submitted December 14, 1990, resubmitted In Banc September 18, 1991, affirmed February 12, 1992

Leonard DAVENPORT
and Katie Davenport,
*Respondents,*

*v.*

Matthew GRUBER
and Alice Gruber,
*Appellants.*

(88-3702; CA A61071)

826 P2d 59

Nancy G. Neslund, Salem, argued the cause for appellants. On the briefs were William D. Brandt and Clayton C. Patrick, Salem.

Michael J. Bandonis, Newport, argued the cause for respondents. With him on the brief was Minor, Beeson & Boone, Newport.

BUTTLER, J.

Riggs, J., specially concurring.

Edmonds, J., dissenting.

## BUTTLER, J.

Plaintiffs brought this action to quiet title to standing timber. The trial court granted plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment. We affirm.

The material facts are not in dispute. In 1952, the Irishes owned the timber, as well as the underlying real property. In that year, they sold "all merchantable fir, spruce and hemlock timber" on the real property to Allen, together with the right to enter the real property and remove the timber until February 14, 1955. After that date, "all timber or logs remaining on said property" reverted to the grantor. On December 16, 1954, plaintiffs became the record owners of the real property, subject to Allen's right to enter and remove the timber until February 14, 1955.

At some time after June 30, 1954, but before February 14, 1955, plaintiffs obtained an assignment from Allen of his interest in the timber on the real property. Although plaintiffs' ownership of the timber by virtue of that assignment was not a matter of record, after February 14, 1955, the deed records showed that plaintiffs, by virtue of the terms of the reversion in the timber deed to Allen, owned both the underlying real property and "all timber or logs" then remaining on the property after February 14, 1955.

Real property taxes were assessed separately against the timber and the underlying real property for the tax years 1953-54 and 1954-55. ORS 308.115. During those tax years, Allen, the "owner" of the timber, failed to pay the taxes on the timber. Plaintiffs, however, paid the taxes assessed against the land. In 1958, Lincoln County filed an action to foreclose its lien on the timber for unpaid taxes. Although by that time plaintiffs owned both the land and the timber, they were neither named as parties to that foreclosure nor given notice of it and did not have actual notice of the foreclosure. Allen, who no longer had *any* interest in the timber and who could not have cared less about the foreclosure, was made a party as the "owner shown by the latest tax roll." The timber was foreclosed, and the county obtained a tax deed when the statutory redemption period expired in 1960.

In 1966, plaintiffs sold a portion of the land to defendants. In the course of a title examination connected with the sale, defendants discovered the county's deed to the timber on the entire parcel and purchased the county's interest in 1967. In 1988, they announced a plan to log the timber. Plaintiffs objected and filed this action. Defendants counterclaimed to quiet title in themselves and also sought the court's authority to enter on plaintiffs' property to remove the timber.

A party is entitled to summary judgment if the pleadings, depositions, admissions on file and affidavits show that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. ORCP 47C. On appeal, we review the record in the light most favorable to the party opposing the motion. *Seeborg v. General Motors Corp.*, 284 Or 695, 699, 588 P2d 1100 (1978). In deciding the motions for summary judgment, the trial court relied on the provisions relating to the Forest Products Harvest Tax, ORS chapter 321. On appeal, both parties agree that the trial court relied on the wrong statutory scheme and that the applicable statutes are in ORS chapters 311 and 312. We agree.

At the time of the foreclosure, ORS 311.555 provided:

> "Each person, firm or corporation owning real or personal property within the state, or against whom taxes upon real or personal property are chargeable, shall keep the tax collector of the county where such real or personal property is situate informed of the true and correct address of the person, firm or corporation. No person, firm or corporation who fails to keep the tax collector so informed shall be permitted to plead lack of due notice given by the tax collector in any suit, action or other proceedings commenced or prosecuted under the provisions of ORS 311.545 to 311.565 or in any matter growing out of the administration of ORS 311.545 to 311.565."

Plaintiffs contend that, notwithstanding that statute, they were entitled to notice of the foreclosure, because they were the record owners of both the land and the timber and that to uphold the foreclosure as to them would be to deprive them of their property without the due process of law guaranteed by

the Fourteenth Amendment to the United States Constitution. They rely on *Seattle-First National Bank v. Umatilla Co.*, 77 Or App 283, 713 P2d 33, *rev den* 300 Or 704 (1986).

Defendant, on the other hand, contends that in *Grant County v. Guyer*, 296 Or 14, 672 P2d 702 (1983), the Supreme Court held that the statutory tax foreclosure procedures do not offend due process. Relying on *Mullane v. Central Hanover Tr. Co.*, 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950), *Grant County* held that publication was constitutionally sufficient notice of tax foreclosure proceedings if it is supplemental to other action which, in itself, may reasonably be expected to convey a warning. The defendant there, who was the record owner of the property, had been given written notice pursuant to ORS 311.545 each year for three years of the tax delinquency. When the defendant failed to cure the delinquencies by the end of three year period, foreclosure proceedings were commenced. ORS 312.010(1). The defendant was named as a party and was named in the published notice. That is not this case.

In *Seattle-First National Bank v. Umatilla Co., supra,* we held that the version of ORS 312.040(1) in effect in 1983 (the same as that in effect in 1958) was unconstitutional as applied to record lienholders. The plaintiff was the record holder, by assignment, of a beneficial interest in a trust deed relating to certain real property. The record owner (trustor) had failed to pay taxes, and the county foreclosed on the property, eventually obtaining a tax deed. The county published notice of the foreclosure proceeding, as required by ORS 312.040(1), naming the trustor. The plaintiff was not named as a party and was not otherwise given notice. The plaintiff brought an action to challenge the foreclosure. The trial court dismissed the complaint for failure to state a claim for relief. On appeal, the plaintiff argued that, because its interest was recorded, foreclosure based only on the notice provisions of ORS 312.040(1) deprived it of property without due process of law. The county argued that the procedure of ORS 312.140, under which a person holding a recorded lien may file a request for mailed notice of a foreclosure list, provided the plaintiff with all the process it was due.

Relying on *Mennonite Board of Missions v. Adams*, 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983), we held

that the statutory scheme, which was substantially identical to the one involved here, did not afford the plaintiff due process, because it had a recorded security interest that the county could have readily discovered from the public records. The fact that the plaintiff could have taken other steps to protect its interest did not relieve the county of its constitutional obligation to give notice. Because there is no meaningful distinction between *Seattle-First* and this case, plaintiffs are correct, and the trial court did not err in granting their motion for summary judgment, albeit for the wrong reason.

The dissent would distinguish this case from *Seattle-First* on the ground that plaintiffs failed to record their assignment of the timber from Allen to them and to inform the tax collector of their interest in the timber. After February 14, 1955, plaintiffs had become the absolute owners of the timber, which had reverted to them as the owners of the underlying land under the 1952 timber deed to Allen. Recording the earlier assignment of the timber was not necessary and would have been redundant. Accordingly, as in *Seattle-First*, plaintiffs' interest was a matter of public record and the fact that they *could* have informed the tax collector of their interest pursuant to the statute did not relieve the county of its obligation to give plaintiffs notice of the foreclosure. The dissent's distinction does not exist.

Affirmed.

**RIGGS, J.,** specially concurring.

I concur with the majority's result, but I would reach that conclusion by a different path. We are not compelled to decide this case on the parties' constitutional arguments, if there is a non-constitutional dispositive result.[1]

---

[1] Ordinarily a party is limited on appeal to the arguments raised below. However, the Supreme Court has said:

"We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. The first ordinarily is essential, the second less so, the third least. Thus, when a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision." *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). (Citations omitted.)

Here the parties raised the issue of whether defendants have the present right to log the timber. Their omission of a dispositive argument based on non-constitutional law does not require us to make a needless constitutional decision.

The 1959 tax deed conveyed "timber" to the county, but specified no time period for removal of the timber. If a conveyance of timber does not specify the time within which the timber must be removed, a court will imply a reasonable time. *Franke v. Welch*, 254 Or 149, 151, 458 P2d 441 (1969). However, because it "has the effect of practically ousting the owner of the soil from its use and enjoyment," a perpetual right to remove will not be presumed and must be established by clear and definite language in the conveyance. *Clyde v. Walker*, 220 Or 137, 141, 348 P2d 1104 (1960). "Ordinarily a county, *paying proper attention to its business*, will spell out in its deeds a perpetual reservation or the exact time contemplated by the parties * * *." *Emerson v. Hood River County et al*, 223 Or 112, 125, 354 P2d 74 (1960). (Emphasis supplied.) If it fails to do so, the reasonable time for removal rule applies. Here, the county failed to spell out any time for removal in either the tax deed or the 1967 deed to defendants. Because the tax deed is silent as to the time for removal, the county and its successors had a reasonable time to remove the timber.

The question of whether a reasonable time has passed usually depends on the particular facts in each case. *Emerson v. Hood River County et al*, *supra*, 223 Or at 121. However, after noting that no adjudicated case had held that 24 years would be a reasonable time in which to remove timber, the Supreme Court has held that waiting 24 years to remove timber was an unreasonable length of time. *Parsons v. Boggie*, 139 Or 469, 474, 11 P2d 280 (1932). In this case, the tax deed conveyed the timber in 1959, but no attempt was made to remove it until 1988. I would hold that 29 years is an unreasonable length of time as a matter of law. Even if the running of the period were measured from 1967, when the county conveyed the timber to defendants, no Oregon cases hold that 21 years is a reasonable time.

> "When the timber is not removed within a reasonable length of time, notwithstanding that there is no forfeiture clause in the contract, it reverts to, and becomes the property of the owner of the fee of the land. Timber growing upon land is as much a part of the real estate as the soil on which it grows." *Parsons v. Boggie*, *supra*, 139 Or at 473 (Citations omitted.)

Because the timber was not removed in a reasonable time, its ownership reverted to plaintiffs as the owners of the

underlying land. The trial court may have given the wrong reason for its decision, but it did not err in granting plaintiffs' motion for summary judgment.

I specially concur.

**EDMONDS, J.,** dissenting.

Amazingly, the majority ignores the most salient facts in the record when it holds that the county's compliance with the provisions of ORS chapter 312 did not afford plaintiffs due process regarding the foreclosure of their property for a tax delinquency. Unlike in *Seattle-First National Bank v. Umatilla Co.*, 77 Or App 283, 713 P2d 33, *rev den* 300 Or 704 (1986), plaintiffs are the delinquent taxpayers, and there is no evidence that the county failed to comply with all statutory requirements regarding notice to them.[1] In *Grant County v. Guyer*, 296 Or 14, 672 P2d 702 (1983), the Supreme Court considered this precise issue. It discussed the holding in *Mennonite Board of Missions v. Adams*, 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983), and noted that, as to the constitutionality of notice to taxpayers, *Mennonite* "says nothing about publication supplemented by notices by mail." 296 Or at 20. The court then upheld the constitutionality of the same statutory provisions that are at issue in this case. It said that publication was constitutionally sufficient notice of tax foreclosure proceedings if it was supplemented by other action such as mail that, by itself, may reasonably be expected to convey a warning.

A prerequisite to requiring the receiving of notice under the Due Process Clause is that the governmental unit that is required to give the notice must have enough information to give it. There are at least two ways in which plaintiffs could have given the county notice of their interest in the timber. They could have recorded the assignment of the

[1] In *Seattle-First National Bank v. Umatilla Co., supra*, the plaintiff was the record holder by an assignment of a beneficial interest in a trust deed, not the taxpayer. The county did not mail or personally serve the plaintiff with notice of the tax delinquency or the foreclosure action, and the plaintiff had no notice of the proceeding. The county only published notice. The county argued that the procedure in ORS 312.140, under which a person holding a recorded lien may file a request for mailed notice of a foreclosure list, provided the plaintiff with all the process it was due so that it was not necessary to mail notice to interested parties. We held that the Due Process Clause requires more. The provisions of ORS 312.140 are not at issue in this case.

timber to them by Allen in 1954 or they could have complied with ORS 311.555, which requires every taxpayer to inform the county tax collector of the taxpayer's correct address. There is no evidence that plaintiffs did either; yet the majority rewards their inaction by declaring the application of the statutory scheme unconstitutional as to them. The result is that, before filing a tax foreclosure, a county will be required to do a complete title search for every property to determine whether remainder interests may have become viable, because the triggering event occurred. That result flies in the face of the provisions in ORS chapter 312, which the legislature enacted as a pragmatic means by which a county could foreclose the property of delinquent taxpayers.

I dissent.

Richardson, Deits and Durham, JJ., join in this dissent.